No. 15,586.

HELKEY *v.* ASHLEY

(155 P. [2d] 143)

Decided January 8, 1945.

Messrs. PORTER, STEWART & CARROLL, for plaintiff in error.

Mr. THOMAS A. NEVENS, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

DEFENDANT in error was the plaintiff in the trial court and will be so referred to herein. As lessee and optionee under a contract covering 640 acres of land in Saguache county, he brought suit against the lessor-optionor for specific performance, alleging tender of the purchase price and seeking conveyance of the land described in the contract. The wife of the lessor thereupon intervened, claiming a homestead right. After a trial without a jury the court made findings generally for the plaintiff and against the defendant and the intervener, and a decree providing for specific performance under

the contract was entered. Intervener comes here on writ of error and asks that the cause be determined on her supersedeas application, and we have elected so to dispose of it.

The evidence showed that the lease-option was signed by the plaintiff and by the husband of intervener on November 26, 1938. The regular annual rental of $50 was paid over the five year term of the lease, or a total of $250 in rentals received. The option paragraph provided that plaintiff could at any time during the tenancy purchase the property for the sum of $1,200, all payments on account of rent to apply on the option price. Plaintiff, toward the end of the term, undertook to exercise the option by paying the sum of $950, which was the balance due to complete the agreed purchase price after crediting the payments on account of rent. Being unsuccessful in obtaining deed from the title holder, he subsequently, in December 1943, called personally on the husband of intervener accompanied by two witnesses, who corroborate his testimony that he presented to the lessor-optionor a warranty deed and a quitclaim deed, each conveying the property to him as grantee, and also tendered $950 in cash and offered to take the lessor-optionor's conveyance of the property by either the warranty or the quitclaim deed; that the latter declined to accept payment and to convey the land. Two days later intervener went to the office of the county clerk and recorder of Saguache county and made a marginal notation on the county records, claiming a homestead exemption on the property. The testimony of the lessor-optionor was that he was sick when the three men called upon him; that plaintiff fumbled with some paper money but did not offer it to him; he did not claim that if it had been offered he would have accepted it or that he would have executed either deed. The trial court found that there had been a good and sufficient tender of the purchase price. We are of the opinion that there was ample evidence to support this

finding. There was also evidence, and the trial court so found, that intervener knew of the existence of the contract of lease and option between her husband and the plaintiff shortly after it was executed in 1938. In fact, she testified that she objected to her husband having signed it when he told her what he had done shortly after having executed it.

Intervener relies upon the facts that, (1) the contract between her husband and plaintiff was not acknowledged; (2) it was not recorded prior to the filing of her homestead exemption; and (3) she was not a party to the contract. We have come to the following conclusion:

1. The contract was not rendered invalid because the signatures thereto were not acknowledged.

2. Nor was it necessary to obtain intervener's signature to the contract where the title to the land covered by the contract was solely in the name of her husband. *Wright v. Whittick,* 18 Colo. 54, 31 Pac. 490.

3. Nor, in this case, does the fact that intervener's homestead exemption claim was noted on the record prior to the recording of the option contract between her husband and plaintiff give her a predominant right. Occupancy of the premises by one claiming a homestead exemption is a necessary requirement to enforce such a claim. Our statute reads, "Such homesteads shall only be exempt as provided in section 23 of this chapter, while occupied as such by the owner thereof, or his or her family." '35 C.S.A., vol. 3, chap. 93, § 25. On the question of occupancy, the trial court found that, "Occupancy and the existence of the marginal declaration, up to the time of the trial, have never been contemporaneous for a moment. And if there is an intent to return there is nothing in the evidence to indicate it, or to suggest when. With the exception of the few months in the summer of 1943, it is extremely doubtful that it was ever occupied as a home, since at, or before, the lease-option was made. The lease-option, made in 1938, is

dated at Salida. But there is no suggestion where the family, at that time, lived or made their home."

██ ██ A marginal declaration of homestead cannot operate retroactively. *Bean v. Eves,* 92 Colo. 339, 20 P. (2d) 544. Two days before the marginal declaration was made, the contract between plaintiff and husband of intervener became a fixed obligation to convey land, and Thompson, in his treatise on real property, volume 1, page 1024, section 929, in discussing the application of the homestead exemption, includes the following: "Nor can it be claimed against a contract to convey land, made by a married man whose wife had not joined in the contract; the claimant subsequently setting apart the land as homestead and refusing to convey on the ground that his wife refused to join in the conveyance."

The cases upon which counsel for intervener rely either affirmatively show a valid occupancy or do not question it. The cases turn on the priority of recording as between the lien of the person claiming the homestead exemption or that of the judgment or other creditor—circumstances which we do not believe are involved in this case.

██ We believe the result reached by the trial court is in harmony with the spirit, as well as the letter, of our exemption statute. The purpose of the designation of property as a homestead is to place it out of the reach of creditors while occupied as a home. *Barnett v. Knight,* 7 Colo. 365, 3 Pac. 747. The instant case is not one of a creditor taking the home property and leaving its occupants destitute; on the contrary, it is that of a purchaser, under a valid contract, giving a valuable consideration for land—a consideration that both parties have stipulated represents the fair value of the property—a consideration that is immediately available for the purchase of a home which, when occupied as such, will afford an opportunity for a valid claim of a homestead exemption.

Judgment affirmed.