## BAULDRY v. HALL et al.
### No. 13795.

United States Court of Appeals
Eighth Circuit.

May 4, 1949.

Alan Loth, of Fort Dodge, Iowa (Loth & Melton, of Fort Dodge, Iowa, and W. W. White, of Iowa Falls, Iowa, on the briefs), for appellant.

Gareld Leming, of Hampton, Iowa (Leming & Hobson, of Hampton, Iowa, on the brief), for appellees.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The referee in bankruptcy held that certain personal property in the possession of the bankrupt, Cleo Bauldry, appellant here, at the time of his adjudication as a bankrupt, was exempt under the Iowa exemption laws. The District Court for the Northern District of Iowa set aside that order, holding that the property was not exempt. In Re Bauldry, 78 F.Supp. 412. From that judgment the bankrupt appeals.

The facts are not in dispute. The bankrupt was an Iowa farmer. On September 15, 1947, he filed a voluntary petition in bankruptcy. September 16, 1947, he was adjudged a bankrupt. On the date of the adjudication he was in possession of 77 head of hogs, 11 over six months of age and 66 under six months. The nature of his title to those hogs furnishes the basis for the present controversy. If he "owned" them at the date of his adjudication in bankruptcy, he was entitled to hold as exempt "five hogs, and all pigs under six months" by virtue of 1946 Code of Iowa, Section 627.6 I.C.A. The bankrupt claims that he had sufficient ownership in and title to the 66 pigs under six months old and to five of those over that age to hold them under the foregoing exemption statute against the claims of his creditors in the bankruptcy proceeding. His creditors and the trustee in bankruptcy, the appellees here, contend that he did not possess the requisite title or attributes of ownership. The facts incident to the bankrupt's claim of ownership follow.

The Farmers Hybrid Seed Corn Company embarked upon a hybrid hog breeding program to develop better breeding hogs. To carry out that program it made contracts with "selected farmers of outstanding experience". On December 9, 1946, the Company made such a contract with appellant. That contract is set out in full in the trial court's memorandum opinion, In Re Bauldry, supra, and need not be again reproduced in haec verba here. Under that contract the arrangement contemplated (and carried out until the intervention of the bankruptcy proceedings) was that the Company was to furnish the brood sows for which the bankrupt was to make a "cash deposit" equal to the market price of the sows at

the time of their delivery. The Company was to furnish the necessary boars, without any cash deposit. The boars were to be removed from the premises at the Company's election. The bankrupt was to furnish all necessary feed and perform the services necessary to grow and market the hogs and their offspring under the direction of the Company. The Company had the right to go onto the premises at any time to inspect the hogs and the facilities for their care. None of the hogs or their offspring were to be moved from bankrupt's premises except as directed by the Company, and no other hogs were to be raised on the farm or brought onto the farm without the Company's permission. The bankrupt was to fill out report forms furnished by the Company. The Company agreed to vaccinate all pigs for cholera at its expense. If other veterinary service was needed it was to be paid for by the bankrupt. The Company was not responsible for any loss of the sows or pigs and the bankrupt agreed to exonerate the Company from any injury or damage done by any hog or pig to any person or property. In the event the bankrupt failed to perform any of the conditions of the contract, the Company was authorized to "repossess the hogs and the increase". In the event of such "repossession", bankrupt was to be paid the local market price at that time of the hogs "repossessed".

In the event the contract was carried out, the bankrupt was to have the right to sell the sows, after they were no longer necessary to the raising of the pigs, to anyone he chose and on his own terms, if the Company had not taken them. The "deposit" for the sows was not to be returned to him under any circumstance. The Company had the right to select from the pigs raised the boars and gilts it desired to take. This selection was to be made in October, or if fall pigs, in April. The bankrupt's compensation for the pigs taken by the Company was to be fixed at the market price on such future day in October or April as was fixed by the bankrupt. For the boar pigs taken by the Company a bonus of fifty pounds per animal was to be allowed. There was no bonus for the gilts. The bankrupt had the right to sell all pigs not selected by the Company as he chose, and without any accounting therefor to the Company. The second paragraph of the contract was as follows: "2. The title and ownership of all hogs and pigs and their offspring no matter how far removed, furnished by the Company shall be and remain in the Company absolutely."

The conclusion of the referee that the 66 pigs and five hogs were exempt was based on the legal premise that the arrangement provided for by the contract constituted a conditional sale of the brood sows with the result that the bankrupt had sufficient title and ownership in them and their increase to support his exemption claim, while the District Court concluded that the arrangement constituted a bailment only of the sows with the title and ownership of them and their increase remaining in the Company and did not invest the bankrupt with the attributes of ownership necessary to support his exemption claim. It does not appear that the question whether the title of the bankrupt, as a bailee, would be sufficient to make the Iowa exemption law applicable was presented either to the referee or to the District Court. The appellant's position now is that the bankrupt's title to the increase —the pigs—is sufficient to sustain his claim of exemption whether the arrangement be construed as a conditional sale or as a bailment. The scope of the Iowa exemption law therefore becomes of primary importance.

The parties all agree that the Iowa exemption laws are to be liberally construed. In construing the Iowa Homestead Exemption Statute in American Savings Bank of Marengo v. Willenbrock, 209 Iowa 250, 228 N.W. 295, loc. cit. 297, the Iowa Supreme Court said: "Homestead exemption is allowed, not for the financial profit or merely as a margin of financial safety to the debtor. The exemption is for the benefit of the family, to provide wife (or husband), children, and dependents with a home. The exemption is granted not merely out of grace to the debtor, but as a matter of public policy. The state itself is interested in it. The law allowing the exemption is to be liberally construed, and is not to be pared away by construction.

so as to defeat its beneficent, sociological, and economic purpose."

While the exemption statute in question, 1946 Code of Iowa, Section 627.6, I.C.A., supra, does not provide in specific terms that a debtor must be the owner of the items particularly described as being exempt, yet the language used clearly requires ownership. In paragraph 21 of Section 627.6 it is provided that: "If the debtor * * * the head of a family * * * does not own one or more of the foregoing items of property", his wife may claim the exemption.

The case of Garver, Adm'r, v. Hawkeye Insurance Company, 69 Iowa 202, 28 N.W. 555, 556, is cited by appellees on the question of the type and extent of ownership necessary to constitute the ownership contemplated by the statute. That case merely holds that an application for fire insurance which stated that the applicant was the "sole and undisputed owner", when he in fact was only a life tenant, was a material misdescription of the interest of the applicant, in that he was not the sole owner. The court observed that it would be conceded the applicant had an insurable interest. It also quoted with approval a definition from Bovier's Law Dict., Rawle's Third Revision, p. 2437 of an owner of property as one "'who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy, and to do with as he pleases, even to spoil or destroy it as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.'"

The Homestead Exemption Statute, 1946 Iowa Code, Sections 561.1 and 561.4, I.C.A., require that the homestead embrace the house used as a home by the owner, and that the owner, husband or wife, may select the homestead. In passing upon the title necessary to support a homestead exemption the Iowa Supreme Court in Lennert v. Cross, 215 Iowa 551, 241 N.W. 787, 244 N.W. 693, held that a son had such an interest as would support a homestead exemption, although the legal title was held by his father. And the Court there quoted with approval from the earlier case of Rutledge v. Wright, 186 Iowa 777, 171 N.W. 28, 30: "'It is

not essential to the acquisition of a homestead within the meaning of the statute that the claimant have a perfect or complete legal title. It is essential that he have a sufficient title to justify his occupancy. Occupancy under such a title will justify a claim of homestead right subject to the limitations of the statute.'"

In Livasy v. State Bank of Redfield, 185 Iowa 442, 170 N.W. 756, the Court said: "Nor is it essential that the claimant have the fee title. The homestead may exist in a life estate, a leasehold estate (Wertz v. Merritt, 74 Iowa 683, 39 N.W. 103), or in an equitable estate or possibly partly one and partly another. The tenure has nothing to do with the homestead except as a basis for its support. The homestead right is that of possession and enjoyment, use and occupancy. A tenant in common may enjoy the tenancy of property and claim the same as a homestead." (Citing cases.)

■ From the foregoing expressions of the Iowa Supreme Court it is apparent that a debtor's ownership need not be absolute to support an exemption in real or personal property.

■ Appellees contend that the bankrupt did not have any ownership in the hogs in question because the contract with the Company provided that the title and ownership of the hogs and pigs should remain in the Company absolutely. Again the parties are in agreement that the contract must be construed in its entirety. When that process of construction is followed, the contract clearly contemplates that the bankrupt does have a very considerable ownership and interest in the property in dispute. He had invested in these pigs his time and labor and the value of the feed used in raising them. He alone carried the risk of their loss. And he had the right to the proceeds of their sale whether that sale be in the form of a "repossession" by the Company or on the open market in the event the Company chose not to select any of them for breeding purposes. And his right of possession and disposal was absolute as to everyone except the Company. Those rights of the bankrupt were subject only the the paramount right of the Company to take the pigs or

so many of them as it desired. Obviously the Company was interested in retaining such title as it retained by the contract to protect its right to take the pigs, either against the claim of third parties or against any claim of exemption which might be asserted therein by the bankrupt. And the contract gave it that right. But in doing so, it did not and was not intended to deprive the bankrupt of any rights not inconsistent with the rights reserved by the Company. It is conceded that if the contract constituted a sale of the brood sows and their increase, the necessary ownership to support the claimed exemption resulted. Whether the execution of the contract constituted a sale or a bailment is a troublesome question but an unnecessary one to determine in this case. For in either event, under this contract the bankrupt possessed sufficient attributes of ownership in the property in question to bring that ownership and property within the liberal intent and purpose of the Iowa exemption law.

Generally, the rule is that bailees, under circumstances such as these have a definite possessory interest and ownership in the bailment.

"The bailee has, by virtue of the bailment and until its termination, a special property or possessory interest in the subject matter, which is equivalent to, or in the nature of, actual ownership except as against his bailor, and entitles him, whatever may be the class of the bailment, to avail himself of any legal means to defend it against any person who may interfere with his accomplishing the purposes of the bailment." 8 C.J.S., Bailments, § 20b.

In American Jurisprudence, Vol. 6, Bailments, Section 93, page 215, is found the following statement of the general rule: "The decided weight of authority supports the proposition that every bailee has a temporary, qualified property in the things the possession of which is delivered to him. This special property Blackstone calls a possessory interest, which he says a general bailee may vindicate in his own right against any stranger or third person * * *."

No exemption is claimed against the Company. No exemption could be properly asserted against it in view of the contract. The Company took possession of all of the 77 hogs shortly after the adjudication in bankruptcy and is holding the proceeds thereof, computed in accordance with the terms of the contract, subject to the order of the Bankruptcy Court. Those proceeds stand in the same category as the pigs which the money represents. That part of the money which represents the value of the 66 hogs which were less than six months old at the time of the adjudication in bankruptcy and five of those which were more than six months old at that time should be set off to the bankrupt as exempt. The remainder should be turned over to the trustee in bankruptcy for the benefit of creditors. The proper apportionment of the fund will be made by the District Court or the referee in bankruptcy.

For the reasons stated the cause is remanded to the District Court for further proceedings consistent herewith.