No. 16,687.

ESTATE OF WALLACE.
WALLACE *v*. FIRST NATIONAL BANK OF COLORADO SPRINGS
ET AL.
(246 P. [2d] 894)

Decided June 16, 1952.

Messrs. MURRAY, BAKER & WENDELKEN, Mr. JAMES C. WIEBOLDT, for plaintiff in error.

Messrs. HORN & ANDERSON, for Weida F. Alston, defendant in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THE question here involved is whether the wife's

entry of a homestead right on her husband's home property, followed by the husband's death, can thereafter be asserted against another heir at law of her husband where the widow has been allowed her $2,000 widow's allowance under the law of descent and distribution, and the estate otherwise is solvent.

The case arose when the administrator of the husband's estate filed its petition for the sale of the home property. It was disclosed by the petition that the personal property was of the value of $2,053.62, and the claims against the estate amounted to $2,800. The purpose of the sale was to raise funds for the payment of the widow's allowance and expenses of administration. About a month later the widow, plaintiff in error here, filed her petition showing that a homestead entry had been filed on the home property approximately a year prior to the death of decedent, and that she thereafter claimed, and still claims, a homestead interest in the property. She further showed that the county court, in accordance with the administrator's petition, authorized a sale of a portion of the home property, but that no report of a sale or order confirming sale had been made. She prayed for an order directing the administrator to set off and pay to her the sum of $2,000 out of the first proceeds of the sale in satisfaction of the homestead interest, and upon receipt of that sum offered to release her homestead rights. The county court thereupon ordered the administrator to pay to the widow from the proceeds of the sale "the sum of $2,000 out of the first proceeds of said sale in satisfaction of said homestead interest." In the next paragraph, however, it ordered that out of the remaining proceeds of the sale the administrator should pay to the other heir or heirs at law of deceased the sum of $2,000, and that the balance of the proceeds of the sale should be divided one-half to the widow and the other half to the remaining heir or heirs at law of deceased.

The widow then appealed to the district court where,

on a trial de novo, the parties entered into a stipulation as to the facts, from which it appears that, in addition to those already stated, the widow and an adult daughter of deceased by a prior marriage, are the sole and only heirs at law of deceased; that the real estate had been occupied as the home of deceased and plaintiff in error for a substantial period prior to deceased's death, and that since then it had been occupied continuously by plaintiff in error as her home; that her homestead entry was in full accordance and in compliance with section 23, chapter 93, volume 3, '35 C.S.A.; that she had filed her claim for $2,000 widow's allowance against the estate; that this had been allowed as a claim of the fourth class, but had not yet been paid; that the administrator had entered into a contract for the sale of the real estate and all furniture belonging to deceased to the adult daughter of deceased for the sum of $8,700, but that the sale had not been consummated due to the present controversy as to the distribution of the proceeds; that the specific questions presented for determination are: (a) Whether the widow is entitled to the payment of Two Thousand Dollars or any other amount out of the proceeds of the sale of the real estate on account of, or because of, or in lieu of her homestead rights in the property. (b) Whether the widow is entitled to both the homestead rights and a widow's allowance. (c) Whether the widow is entitled to the occupancy of the property rent free until it is sold on account of her homestead interest.

The district court adopted the stipulation of facts as its findings, and further found that the county court had jurisdiction to enter the decree for the sale of real estate; that the estate was solvent; that the net assets of the estate after payment of all claims, including those of the fifth class, amounted to approximately $5,500; that the widow was entitled to the sum of $2,750 as her distributive share, "which sum exceeds the amount provided by law as a homestead exemption and that no part

of said sum is necessary or required to be taken for the payment of claims of the fifth class which represent the debts of the deceased." The court also found, as a matter of law, that the entire net assets of the estate should be distributed under the Colorado statutes of descent and distribution; that for the foregoing reasons the widow was not entitled to be paid out of the assets of the estate the sum of $2,000 as a homestead exemption; and that an allowance of the claim would in effect not be against creditors but against the heirs at law.

The court further found that the widow was entitled to possession of the homestead, and was not chargeable with rent until tender was made to her of the sum of $2,000 which in this case is chargeable against her distributive share of the estate. The court thereupon ordered that the widow's claim for the statutory homestead be denied; that the entire net assets of the estate in the approximate sum of $5,500 be divided equally, one-half to the widow and one-half to the other heir or heirs at law. It also was directed that, because the results of the judgments in the district court and the county court were the same, each party pay their own costs.

The four specifications of points are argued upon the following four headings: 1. The Colorado homestead right is in the nature of a right or interest in property and is not a mere exemption. 2. Since the homestead is an interest in property, the widow cannot be deprived of it without just compensation; otherwise the constitutional due process clause is violated. 3. Even if the homestead interest is construed as merely an exemption, the widow still is entitled to it under the facts presented because an administrator's sale in every sense amounts to an execution against the homestead property to pay the debts, claims and expenses of administration. 4. In an administrator's sale, under the statute, the court must give due consideration to the rights of all. This can only

be accomplished by an allowance to the widow in lieu of her homestead interest.

■ The pertinent provisions of our homestead laws, '35 C.S.A., chapter 93, are as follows:

"§23. * * * Every householder in the State of Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the sum of two thousand dollars, exempt from execution and attachment, arising from any debt, contract or civil obligation, entered into or incurred after the first day of February, in the year of our Lord one thousand eight hundred and sixty-eight. [G. S., §1631; G. L., §1343; R. S., p. 385, §57; R. S. '08, §2950; C. L., §5924.]"

Section 24 provides for a marginal entry by either the husband or wife. For our purposes it is not necessary to set forth this provision in full, except to note the mutuality in the following: "§24. * * * provided, that in case the husband is the owner of said homestead, the wife may cause such entry to be made and recorded, and the signautre of the said entry by the wife shall have the same effect as if entered by the husband, the owner of the property. And in case the wife is the owner of the homestead, and shall fail to make such homestead entry the husband may cause the homestead entry to be made, and the signature thereof by him shall have the same effect as if the entry had been made by the wife, the owner of the property; * * * [L. '11, p. 452, §1; amending R. S. '08, §2951; C. L. §5925.]

"§25. * * * Such homesteads shall only be exempt as provided in section 23 of this chapter, while occupied as such by the owner thereof, or his or her family. [G. S., §1633; G. L., §1345; R. S., p. 385, §59; R. S. '08, § 2952; C. L., §5926.]

"§26. * * * When any person dies seized of a homestead, leaving a widow or husband, or minor children, such widow, or husband, or minor children, shall be entitled to the homestead; but in case there is neither widow, husband, nor minor children, the homestead

shall be liable for debts of the deceased. [G. S., §1634; G. L., §1346, R. S., p. 385, §60; R. S. '08, §2953; C. L., §5927.]

"§27. * * * The homestead mentioned in this subdivision may consist of a house and lot or lots, in any town or city, or of a farm consisting of any number of acres, so that the value does not exceed two thousand dollars. [G. S., §1635; G. L., §1347; R. S., p. 386, §61; R. S. '08, §2954; C. L., §5928.]

"§28. * * * When any creditor shall be of the opinion than any homestead provided for in this subdivision is of greater value than two thousand dollars, on filing affidavit of that fact, with the clerk of the district court, such creditor may proceed against said homestead as in ordinary cases, and if the said homestead shall sell for more than two thousand dollars and costs, the excess shall be applied to the payment of the demand of such creditor; but in all such cases the sum of two thousand dollars, free of charge or expense, shall be paid to the owner of the homestead; and in case the said homestead shall not sell for more than two thousand dollars and costs, the person instituting the proceedings shall pay the costs of such proceeding, and the said proceeding cease and not affect or impair the rights of the owner of the homestead. [G. S., §1637; G. L., §1349; R. S., p. 386, §63; R. S. '08, §2956; C. L., §5930.]"

In addition to the foregoing sections, the legislature in 1927 passed the following provision, being section 119, chapter 40, '35 C.S.A. This again shows the principle of mutuality existing between husband and wife:

"§119. * * * To convey or encumber a homestead, both the husband and wife must execute a conveyance or encumbrance of their respective interests therein. Such conveyance or incumbrance may be one instrument in writing signed by both husband and wife or by their separate instruments in writing, and no special form of acknowledgment other than the form specified by this article shall be necessary; provided, however, that if the

homestead be claimed by a person who at the time of the conveyance or encumbrance thereof be not married, a statement to that effect in such instrument shall be prima facie evidence of such fact. [L. '27, p. 592, §13," as amended by S. L. '47, p. 359.]

In *Union National Bank of Greeley v. Wright,* 78 Colo. 346, 242 Pac. 54, we affirmed the order of the county court in an estate proceeding directing the sale of the real estate of decedent to pay debts and *requiring that $2,000 should be retained out of the proceeds of sale to be paid to the surviving husband of decedent in lieu of his homestead right in the property to be sold.* In the course of our opinion we said: "Under our statutes, the rights of a surviving widow or husband, or minor children of a person who dies seized of a homestead, are not enlarged nor diminished merely by the fact of such death." This quotation is used by counsel for defendant in error in their argument that the widow in the instant case is not entitled to her right of homestead. We believe that the facts of that case are authority for just the opposite, for there the wife died seized of a homestead leaving an insolvent estate and owning no other real estate or property to which resort might be had to pay the debts of deceased or expenses of administration. It therefore was necessary to sell the real estate covered by the homestead in order to pay debts of the estate. The surviving husband continued to occupy the home property, and both parties to the litigation conceded that he was entitled to his homestead right; but he contended that this right, after the death of his wife, entitled him to continuous occupancy of the home regardless of the fact that its value was well in excess of the $2,000 exemption limit. The position of counsel for the executor was that the requirements of the estate necessitated the sale of the property to pay debts. The county court, agreeing with this position, ordered the sale and directed that the sum of $2,000 out of the proceeds be paid to the surviving husband. It was in answer

to the contention that the surviving husband had a continuing right of occupancy in the home property *regardless of its value and regardless of the fact that the estate could not, but for the sale of the home, pay its creditors in full,* that we said: "Under our statutes, the rights of a surviving widow or husband, or minor children of a person who dies seized of a homestead, are not enlarged nor diminished merely by the fact of such death." We also said: "This, we take it, is the purpose of C. L., section 5297 [should be C. L. '21, section 5927; '35 C.S.A., section 26], providing for the rights of the survivors. Furthermore, it would be as bad to hinder or delay the rights of the creditors of the owner of the homestead interest, after the death of the latter, as it would be to do so if he or she were living. If the principle contended for by the bank should be endorsed, one with a homestead right limited to the value of two thousand dollars could live in a mansion worth fifty or more times that amount during his or her natural life, and compel the creditors of an insolvent estate to await the coming of the hearse before their debts were paid. This cannot be." In that case, therefore, we recognized the surviving husband's right of occupancy in the homestead property of his deceased wife, but held that it was not an unlimited right of occupancy but subject to being terminated and liquidated by the payment of $2,000 when the homestead property had a value in excess of that amount and there were unsatisfied claims of creditors. The surviving husband's rights would have been enlarged if he had been allowed to occupy the home property regardless of its value and regardless of there being unsatisfied judgment creditors who were entitled to the surplus above the $2,000 statutory limit. His rights would have been enlarged because he and his wife while living had conjointly no such unlimited right of occupancy.

But by the same token it seems to us that the widow in the instant case has had her rights diminished. She

has been deprived of her right of occupancy which she had during her husband's lifetime. When we referred to rights of a surviving spouse being increased or diminished, we were referring to the right of such survivor under the homestead law and not under the law of descent and distribution.

To affirm the judgments of the county and district courts would be to allow a husband to do by will, or by dying intestate, what he cannot do by conveyance during his lifetime, i.e., dispose of his home property freed of the homestead without his wife's written consent. This would seem to be against both the spirit and the letter of our homestead laws, which are to preserve a right of occupancy for those who stand in the relation of head of a family. To approve the trial court's action is to grant the protection of the homestead when both spouses are living and have each other's mutual support, and to deny it when the survivor, and more especially the widow, stands most in need of aid and protection in maintaining the home. We doubt that this was the intention of the legislature.

In *Chapin Lumber Co. v. Day,* 106 Colo. 194, 103 P. (2d) 14, the wife became the owner of real property and made the marginal homestead entry on the margin of the record title in accordance with the provisions of our statute. She and her husband lived on the property until his death two years later, after which she and an adult son continued to reside there. After the husband's death, a creditor levied upon her property and she claimed her homestead right. We affirmed the action of the trial court, which sustained her claim. The creditor's position was that, when the husband died, the property lost its character as a homestead and could be levied upon by the wife's creditors, on the theory that she had become a single person and was not the head of a family within the provisions of section 23, chapter 93, '35 C.S.A. The widow relied upon section 26, supra. The argument in that case involved the construction of the

word "seized," it being contended that the deceased husband was not "seized" of the property when he died. In rejecting this contention, we said: "If we ascribe to the word 'seized' the construction urged, we find that if Mr. Day had lived and Mrs. Day had died, he would have been entitled to the homestead, while in the re-verse situation the privilege is denied her. We cannot subscribe to the belief that the legislature intended such an absurdity, and prefer to interpret the statute so that its true purpose and intent will be effectuated. *Slater v. Fire and Police Board*, 43 Colo. 225, 231, 96 Pac. 554; *Sheely v. People*, 54 Colo. 136, 138, 129 Pac. 201. In our opinion the proper construction of section 26 is that where a husband and wife occupy a homestead, the death of either does not destroy the homestead right so long as the survivor shall reside upon the property." We believe that this statement, in its relation to the facts of the present case, has a more binding effect than dicta, because it will be noted that our opinion in *Chapin Lumber Co. v. Day, supra*, is directly premised upon the proposition that there would be a homestead right under the same facts as are presented in the instant case. In other words, to deny the widow the benefit of home-stead right in the instant case would destroy the founda-tions for our opinion in *Chapin Lumber Co. v. Day, supra*.

In *Craig Lumber Co. v. Ramey*, 108 Colo. 516, 119 P. (2d) 608, we held that a deserted wife, who had secured a divorce, was entitled to the benefit of the federal and state homestead laws, *even after her six minor children had become grown, married, and had established homes of their own*. We specifically relied upon *Chapin Lum-ber Co. v. Day, supra*, as an answer to the contention that the woman was no longer the head of a family.

Counsel for the adult daughter stress the point that most of our Colorado cases involving the homestead right pertain to situations where judgment creditors are involved. Their argument is that if this were a case in-

volving judgment creditors and not heirs at law under the law of descent and distribution, the homestead right would operate and the widow would retain her right of occupancy.

One answer to this argument is that the county court has made a finding that there are apparently valid fifth class claims filed against the estate, in addition to the widow's allowance which has already been approved as a fourth class claim. Certainly the claims of the fifth class represent debts that were incurred by the deceased spouse during his lifetime, which, when approved by the county court, would seem to make the claimants judgment creditors.

Another answer to the argument that the homestead right is not operative when creditors are not involved is that the right of occupancy is something that would have to exist either in toto or be completely nonexistent.

Occupancy is a physical thing. It cannot alternately appear and disappear like the Cheshire cat in Alice in Wonderland. If the widow is dispossessed of her right of occupancy by those entitled to inherit under the laws of descent and distribution, she is just as surely out of possession as against any judgment creditors. This applies particularly in Colorado, where we have held the presumption of abandonment is raised by cessation of occupancy. *Monte Vista Bank & Trust Co. v. Savage,* 75 Colo. 180, 225 Pac. 219.

The right of occupancy does not dissolve into mist and become nonexistent the minute, during any portion of their married life, the husband and wife who occupy a homestead become free of debt. Neither it would seem should the right of occupancy become any less effective or less existent for the survivor because at the particular instant when the husband dies he may have been out of debt, or his widow may be solvent. While both husband and wife are living, the right of occupancy exists as a continuing right whether the occupants are,

at any particular time, in the creditor or debtor class; but it is there, nevertheless, "as an ever present help in time of trouble." So we believe it is in respect to the survivor.

If we should apply the rule adopted by the county and district courts, and urged by counsel for defendant in error, we would have a situation where the owner of the homestead would take precedence over creditors; creditors in turn would take precedence over the heirs or devisees; the heirs and devisees in turn, where there were no creditors, would take precedence over the homestead. Whether the right of occupancy under the homestead would continue in favor of the surviving spouse would depend, therefore, upon the existence of creditors, which of course could not be definitely determined until the time for filing claims against the estate had expired. We do not believe that the legislature intended that the right of occupancy by the surviving spouse under the homestead right should depend upon the fortuitous circumstance of whether the spouse so deceased happened to have, at the time of his or her death, creditors who, but for the entry of a homestead, would be in a position to levy an execution against the home property.

It will be noted that the right applies to the head of the family. We have already held that the widow becomes the head of the family. _Chapin Lumber Co. v. Day, supra._ The homestead right would immediately apply to her debts, _Chapin Lumber Co. v. Day, supra,_ if it were not already applicable before her husband's death. The only way she can be protected against her creditors is by allowing her a continuing right of occupancy.

Counsel for the adult child cite _Vincent v. Martin, Executor,_ 91 Colo. 106, 11 P. (2d) 1089, as authority in support of the proposition that no allowances are permitted in an estate except those granted by statute, and

that there is no statutory allowance to a widow except a widow's allowance.

 This argument is true so far as it goes, but it is true only in the matter of administration of estates. A homestead right, however, is not governed by the law of descent and distribution. It is not a part of an estate, but insofar as it may appear in the administration of an estate it is more in the nature of a lien that has attached to the home property, and the'heir or devisee who succeeds to the title of the home property takes it subject to that limitation or qualification. The beneficiaries of the estate of a deceased person have no interest in the homestead of a surviving spouse. *Union National Bank v. Wright, supra.*

A legislative history of the provisions for widow's allowance and for homestead exemption would seem further to corroborate this position, and would indicate there was no intention of the legislature by the enactment of one to repeal or modify the other. Both provisions have their origin in territorial days. The first provision for a widow's allowance appeared in an act concerning descent and distributions occurring October 31, 1861, and the first provision for homestead appeared in an act approved January 10, 1868. The Colorado Constitution, 1876, contains a provision that the General Assembly shall pass liberal homestead and exemption laws, and at the following session of the legislature in 1877 the territorial laws of 1868 were reenacted. The same session of the legislature reenacted the territorial laws of descent and distribution of 1868. A study of the history of the legislation on these two subjects, over a period of ninety-one years, discloses that nowhere has there been any reference to homestead laws in the legislation concerning widow's allowance, nor any reference to the former in the latter. This fact becomes more striking when it is noted that four times, i.e., 1877, 1883, 1903 and 1911, the legislature has simultaneously enacted laws dealing with widow's allowance and the right

**598**

of homestead. Nowhere does there appear to be any repeal of the provisions of one act by the other. The two provisions must be construed not as conflicting but as in pari materia.

In *Barnett v. Knight*, 7 Colo. 365, 3 Pac. 747, the contention was made that the homestead law and the statute of frauds were in conflict, and the former would therefore have to give way to the latter. We held that the homestead' law and the statute of frauds are "in pari materia and must be construed together." The former controls the latter as to the property specified, and in the disposition of property there can be no fraud of the creditors. Thompson on Homesteads and Exemptions, sections 411, 412; Bump on Fraudulent Conveyances, pages 211, 215, 242. Likewise we have held that the judgment lien statute and the statute governing homesteads are in pari materia and must be construed together. *Weare v. Johnson*, 20 Colo. 363, 38 Pac. 374; *Woodward v. People's National Bank*, 2 Colo. App. 369, 31 Pac. 184.

On theory, there should be no conflict between a widow's allowance and a right of homestead. The widow's allowance arose as a measure to give the widow, during the period of administration of her husband's estate, a right to certain articles of personal property formerly belonging to her husband so that she would not be stripped of the means with which to carry on. The widow's allowance, being a claim of the fourth class, is beyond the reach of the general creditors of the estate; but it is subject to the personal creditors of the widow. *Isbell-Kent-Oakes D. G. Co. v. Larimer County Bank & Trust Co.*, 75 Colo. 451, 226 Pac. 293. It is temporary in its nature, designed to help the widow during the period of administration of her husband's estate.

In contrast, a right to a homestead is of a more permanent nature, affording a measure of protection to the family through the years. Some jurisdictions even regard the right as in the nature of a police regulation

primarily for the benefit of the community. 35 C.J.S., page 8, §1, Exemptions.

It is to be noted that in the event of the wife's prior death the surviving husband has a homestead right but, having no allowance under the law of descent and distribution similar to the widow's allowance, his right to a continuing homestead may seem more apparent.

■ The purpose of the homestead right in Colorado was early expressed in *Barnett v. Knight, supra,* by Mr. Justice Helm when he said:

"Two governing principles underlie all homestead legislation:

"*First.* The beneficent design of protecting the citizen householder and his family from the dangers and miseries of destitution consequent upon business reverses or upon calamities from other causes; and

"*Second.* The sound public policy of securing the permanent habitation of the family, and cultivating the local interest, pride and affection of the individual, so essential to the stability and prosperity of a government."

Other jurisdictions have reached a like result. In *Scott v. Scott,* 131 Okla. 144, 268 Pac. 245, the homestead right was held to be the widow's individually and not an interest in the testator's property.

In *Estate of Cole,* 85 Okla. 69, 205 Pac. 172, 178, it was held that the homestead is an individual right and not an interest in the testator's property. It is not subject to testamentary disposition and does not pass under the decedent's will.

Likewise, in *Lindsley v. Lindsley,* 139 Tex. 512, 163 S.W. (2d) 633, and in *Estate of Bain,* 137 Calif. App. 547, 31 P. (2d) 211, it has been held that the widow's homestead rights, having been given by statutes, cannot be taken away by testamentary disposition. And in 40 C.J.S., page 726, section 240, is the statement: "Except where it is otherwise specially provided by the homestead laws, the rights of the widow and children are to

be determined by the provisions of the homestead laws alone and not by the statutes of descent and distribution."

That the legislative arm of this state continues to place a high regard on the homestead right in this jurisdiction may be gathered from the amendment it passed at the 1951 session, increasing the homestead exemption from $2,000 to $5,000. Session Laws 1951, chapter 214, page 522, amending '35 C.S.A., chapter 93, section 23.

The judgment is reversed and the cause remanded with instructions that the widow, Mary B. Wallace, be awarded the sum of $2,000 in lieu of her homestead right as prayed in her petition.

MR. JUSTICE MOORE and MR. JUSTICE CLARK dissent.

MR. JUSTICE CLARK dissenting.

While I share with the majority of the court the altruistic motive which apparently prompted the majority opinion, yet I must respectfully dissent therefrom for the reason that I do not believe our statute is sufficiently broad in its provisions to warrant such a generous interpretation. I believe the scope of the statute is limited by the object sought to be accomplished thereby as set forth in section 23 of the Act (§23, c. 93, '35 C.S.A.), which, in my view, goes no farther than to declare an exemption "from execution and attachment" where, and only in such instances, as same shall arise from attempt to so enforce liability "from any debt, contract or civil obligation entered into or incurred." I cannot concur in the view that, under our statute, there was intended to be created any interest in land, maintainable against the lawful inheritors upon occurrence of the death of the individual in whose name title stood of record. The "homestead" was already in existence, and making the marginal entry did not create it. What the entry does is simply to declare the claim to exemption as against the demands of creditors. If the estate

be insolvent, the exemption still is maintainable against creditors, but where solvent and creditors are fully satisfied, the purpose of the exemption is fulfilled and it should not be permitted to concern the distribution of the assets as between the heirs or legatees.

Concerning the views of the trial court, I also believe that the widow claimant of homestead exemption may remain in possession, rent free, until the claims of all creditors are approved and satisfied and the complete solvency of the estate determined.

I would affirm the judgment of the district court. If the statute is to be widened in scope so as to be more nearly in line with many more liberal laws of other jurisdictions, that is a legislative, rather than a judicial, function, and we should not infringe upon that domain.

MR. JUSTICE MOORE authorizes me to say that he concurs in this dissent.