In the Matter of the ESTATE OF Robbie J. DODGE, also known as Robbie Jean Dodge, also known as Roberta Jean Dodge, Deceased.

Upon Petition of Edward F. Johnston, Co-Conservator of the Estates of Kimberly Valentine Dodge and Johanna Virginia Dodge, Petitioner-Appellant,

and Concerning Dewey F. Dodge, Respondent-Appellee.

No. 82CA1482.

Colorado Court of Appeals, Div. II.

May 31, 1984.

Joseph A. Genova, Jr., Pueblo, for petitioner-appellant.

Drummond & Dougherty, P.C., Donald G. Drummond, Pueblo, for respondent-appellee.

BERMAN, Judge.

Petitioner, co-conservator of the estate of the deceased's two minor children, appeals the trial court's denial of the children's petition for homestead exemption. We affirm in part, reverse in part, and remand.

This case arises out of the distribution of the estate of Roberta J. Dodge, who died in January 1982 as the sole owner of the family home located at 991 Nyberg Road in Pueblo County, Colorado. She is survived by four children of a prior marriage, including the two minor children represented by petitioner; and by her husband, Dewey F. Dodge, who is the stepfather of the four children and the respondent-appellee herein.

In mid-December 1981, Mrs. Dodge evicted the respondent from the family home because of increasing marital difficulties. Respondent had lived in and out of the family home during the previous two months as well, during which time he continued to receive his mail at the family home and provided propane for the home. Only Mrs. Dodge's daughter Johanna continued to reside with her at the Nyberg Road residence. Her two eldest children were emancipated and her minor daughter Kimberly has lived at another residence since July 1981.

Mrs. Dodge died testate. In her will, she made specific provisions for her four children by directing that they were to divide the proceeds from the sale of the home among themselves following a one-year period in which respondent was allowed to retain possession of the house.

Petitioner was informally appointed as personal representative of decedent's estate in March 1982, and was appointed as guardian of the deceased's minor children and conservator of their estates in April 1982. Respondent filed petitions for a spousal elective share, for an exempt property allowance, and for supervised administration of the estate, all of which motions the trial court granted in August 1982. Petitioner filed motions for a family allowance and for a homestead exemption in the deceased's estate on behalf of the two minor children of the decedent. In October 1982, the trial court granted petitioner's former, but denied his latter motion. The trial court then granted a homestead exemption to the respondent.

## I.

■ At the outset, we reject respondent's contention that this court lacks jurisdiction to hear this appeal because of the alleged lack of finality of the trial court judgment on the homestead exemption. Section 15–10–308, C.R.S., of the Colorado Probate Code states that the right to appellate review and power of the appellate courts is to be governed by the Colorado Appellate Rules. The relevant portion of C.A.R. 1(a), which catalogs the matters reviewable by this court, states that an appeal to the appellate court may be taken from "a *final* judgment of any district, superior, probate, or juvenile court in all actions or special proceedings whether governed by these rules or by the statutes . . . ." (emphasis added).

Although the Colorado Probate Code furnishes no guidance as to the type of probate court orders which may be deemed "final" for purposes of appeal, *In re Estate of Dandrea*, 40 Colo.App. 547, 577 P.2d 1112 (1978), courts have consistently held in other contexts that a complete determination of the rights of the parties is necessary in order to achieve an appealable "final judgment." *People in Interest of E.A.*, 638 P.2d 278 (Colo.1981); *Stillings v. Davis*, 158 Colo. 308, 406 P.2d 337 (1965); *Dusing v. Nelson*, 7 Colo. 184, 2 P. 922 (1883). Here, we hold that the trial court's denial of petitioner's petition for a homestead exemption and its granting of a homestead exemption to respondent constitutes a complete determination of the rights of the three parties as to the homestead exemption and is therefore an appealable "final judgment." *See Peters v. Peters*, 82 Colo. 503, 261 P. 874 (1927); *Eckman v. Poor*, 38 Colo. 200, 87 P. 1088 (1906).

## II.

We address in this appeal the issue of entitlement to rights under the homestead exemption: specifically, which parties are so entitled and under what circumstances.

Unfortunately, today's homestead laws represent 19th century perceptions of the

family and, despite the significant changes which the family has undergone since then, homestead laws do not reflect those changes. Comment, *The Homestead Act: An Important Law to Protect The Family But a Law in Need of Reform*, 65 *Mass.L. Rev.* 175 (1981). Therefore, paramount to our determination of the questions presented in this appeal is an understanding of the history, purpose, and spirit underlying the long-standing homestead exemption.

Although exemptions from execution, embracing real and personal property, were known in England at common law and also in this country at an early date, homestead legislation appears to be a uniquely American contribution to the law of real property and traces its origins to a statute of the Republic of Texas enacted in 1839 (Act of January 26, 1839, [1838–1840] LAWS OF REPUBLIC OF TEXAS, 3d Cong., 1st Sess. 113). Haskins, *Homestead Exemptions*, 63 *Harv.L.Rev.* 1289 (1950). An early Texas case described the policy behind the homestead exemption by stating that its purpose is:

> "to cherish and support in the bosoms of individuals, those feelings of sublime independence which are so essential to the maintenance of free institutions."

*Franklin v. Coffee*, 18 Tex. 413 at 416 (1857).

■ Colorado's homestead statute dates back to January 10, 1868. *Barnett v. Knight*, 7 Colo. 365, 3 P. 747 (1884). Our homestead exemption is entirely the creature of statute, but it is not in derogation of the common law, and thus, the statutory homestead provisions are to be liberally construed to give effect to the statute's purposes. *Barnett v. Knight, supra.* Moreover, the law of homestead exemptions is not to be pared away by construction so as to defeat its beneficent sociological and economic purposes. *See Bauldry v. Hall*, 174 F.2d 379 (8th Cir.1949).

■ The primary purpose of such an exemption is to secure to the householder a home for himself and his family, regardless of the solvency or insolvency of the family, *Woodward v. People's National Bank*, 2

Colo.App. 369, 31 P. 184 (1892); to protect the citizen householder and his family from the dangers and miseries of destitution consequent upon business reverses or upon calamities from other causes; to secure the permanent habitation of the family; and to cultivate the interest, pride, and affection of the individual, so essential to the stability and prosperity of government, *Barnett v. Knight, supra.* It has long been the policy of this state to preserve the home to the family, even at the sacrifice of just demands, for the reason that the preservation of the home is deemed of paramount importance. *McPhee v. O'Rourke*, 10 Colo. 301, 15 P. 420 (1887).

## III.

Petitioner's first contention is that the trial court erred by granting a homestead exemption to the respondent because: (1) respondent failed to file a written counterclaim to petitioner's written claim for a homestead exemption, and (2) respondent was not an "occupant" within the meaning of § 38–41–203, C.R.S. (1982 Repl.Vol. 16A). We disagree.

## A.

■ As to respondent's lack of a formal filing, we hasten to emphasize a fact pointed out by petitioner himself in his brief— namely, that § 38–41–202, C.R.S. (1982 Repl.Vol. 16A) eliminated, as of 1975, the requirement of formally filing a homestead statement in order to perfect one's right to a homestead exemption. Since, under the facts of this case, § 38–41–202(2), C.R.S. (1982 Repl.Vol. 16A) is inapplicable, the homestead exemption is created "automatically" pursuant to § 38–41–202(1) of the statute. Therefore, the fact that respondent filed no formal statement or written counterclaim to petitioner's claim does not preclude him from entitlement to a homestead exemption.

## B.

■ The proper construction of § 38–41–204, C.R.S. (1982 Repl.Vol. 16A) is that,

where a husband and wife occupy a homestead, the death of either does not destroy the homestead rights so long as the survivor shall *reside* upon the property. *Chapin Lumber Co. v. Day*, 106 Colo. 194, 103 P.2d 14 (1940). In other words, the homestead exemption applies only while the property is *occupied* as a home by the owner thereof or his family. Section 38–41–203, C.R.S. (1982 Repl.Vol. 16A).

■ Regarding the "occupancy" issue, the trial court here found as follows:

"Mr. Dodge did not abandon and therefore lose his homestead right by a temporary absence from the family home in December, 1981. *Pierson v. Truax*, 15 Colo. 223, 25 P. 183 (1890). . . ."

It is clear from this statement that the trial court was finding that respondent was an "occupant" of the family home for purposes of the homestead law, notwithstanding his "temporary absences" therefrom. The facts, as revealed in the record, support this finding.

The record shows, first, that although respondent was asked to remove himself from the family home in June 1981, he returned to the home some two months later. In fact, as the trial court stated, the record reveals that respondent lived in the family home "almost *all* the month of October and *most* of November and part of December." (emphasis added). The record reveals that respondent was sleeping at the family home until just a week or two before Christmas of 1981. That means that respondent was physically occupying the family home until roughly three weeks before his wife's death. Second, even after respondent had left the family home in mid-December, the record shows that he still received his mail at the family residence.

Since, in view of *Pierson v. Truax*, *supra*, the record fully supports the trial court's factual finding of respondent's occupancy, we are bound to accept that finding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). The fact that respondent had no record interest in the family home has no bearing on whether he

occupied the home. Similarly, the fact that, a week before his wife's death, respondent sought counsel ostensibly for purposes of filing a dissolution of marriage action some time in the future is irrelevant to the question of his *past* occupancy of the family home. There is no basis for considering this latter fact in determining the question of respondent's occupancy through December 1981.

## IV.

■ Petitioner's second argument is that decedent's minor children are not precluded from entitlement to rights under the homestead exemption by virtue of the trial court having granted respondent rights under such an exemption. We agree.

The statute applicable to the case at bar is § 38–41–204, C.R.S. (1982 Repl.Vol. 16A). It provides:

"When any person dies seized of a homestead leaving a widow, or husband, or minor children, such widow, or husband, or minor children are entitled to the homestead. In case there is neither widow, husband, nor minor children, the homestead shall be liable for the debts of the deceased."

The plain language of the statute suggests that the General Assembly has specifically provided for the contingencies of the deceased being survived by a spouse or minor children, and the decedent being survived by neither a spouse nor minor children, and, possibly, the contingency of the decedent being survived by both a spouse and minor children for whom the spouse is legally obligated to care. However, we do not agree with respondent that, in the event the decedent is survived by both a spouse and that spouse's minor stepchildren, only one or the other is entitled to the homestead exemption. Rather, we inquire more deeply into the matter, as did the Supreme Court of Georgia when it queried:

"Can [a] child be deprived of the homestead because [ (s)he] has no father or mother? Was this the spirit and sense of the [homestead provision]? We think

not; but that it was intended to give to orphans, whether one or more, the same rights as to other children whose parent was alive ...." *Rountree v. Dennard,* 59 Ga. 629, 27 Am.R. 401 (1877).

■ The right of the homestead owner's spouse and children to the homestead property is a derivative, rather than a direct, right, *Lear v. Lear,* 234 Ky. 369, 28 S.W.2d 32 (1930); and it is a right which is inchoate during the life of the owner, but becomes consummate on his or her death. *Bushnell v. Loomis,* 234 Mo. 371, 137 S.W. 257 (1911); *Shambaugh v. Scofield,* 132 F.2d 345 (5th Cir.1942) (holding, in addition, that a child's homestead rights do not attach prior to the death of his parents).

While, generally, homestead statutes have been construed to provide that a decedent's surviving spouse may continue to possess and occupy the exempted property, free from execution and attachment arising from any debt, contract, or civil obligation, until remarriage and until the youngest child reaches majority, it must be noted that "minor children have a similar right of occupancy until marriage or majority." 2A *R. Powell & P. Rohan, Real Property* § 263[5] (1981). In other words, the family members entitled to protection under traditional homestead laws have included the relation of widow and stepchildren. *Holloway v. Holloway,* 86 Ga. 576, 12 S.E. 943 (1891). We therefore conclude that included also are a surviving spouse and the stepchildren of the surviving spouse. Simply, the law makes no provision for a homestead for the benefit of the surviving spouse to the exclusion of minor children. 4A *G. Thompson, Real Property* § 1949 at 286 (1979 Repl.Vol.).

We are aware that, usually, the right to claim a homestead exemption is given, not to a family, but to the "head of a family" or to a "householder" or a "housekeeper" who has a legal, moral, or natural obligation to support the other family members occupying the homestead. *See* 40 *C.J.S. Homesteads* § 16 and § 24; *see also Thompson v. Succession of Gow,* 169 La. 546, 125 So. 588 (1929); *Holloway v. Hollo-*

*way, supra.* However, the right to a homestead has sometimes been bestowed on the guardian of minor children, *Rountree v. Dennard, supra,* or on the minors themselves, *Cofer v. Scroggins,* 98 Ala. 342, 13 So. 115 (1893).

Here, the record indicates the existence of no obligation on the part of the respondent to support his two minor stepchildren. Hence, to restrict the right to claim a homestead exemption here to respondent only would, under the unusual facts of this case, undermine the homestead statutes' aim of preserving the home for *all* family occupants, since, if given an exclusive claim to the homestead, respondent could conceivably preclude the minor children from any further use or enjoyment of the family homestead.

Further, the General Assembly's use of the disjunctive, as opposed to the conjunctive, in the body of this statute does not dissuade us from construing the statute so as to allow both a surviving spouse and minor children of decedent rights to an exemption. For we have held that, "if no sensible meaning can be given to a word or phrase, or if it would defeat, manifestly, the real object of the enactment, it should be eliminated," and "to carry out the intention of the legislature, another word may be read for the word used, where the word used would manifestly defeat the legislative intent and the substitution of the other would carry it out." *Thomas v. City of Grand Junction,* 13 Colo.App. 80, 56 P. 665 (1899); *see also Henrie v. Greenless,* 71 Colo. 528, 208 P. 468 (1922) (courts may, in order to carry out the intention of the legislature, substitute "and" for "or").

Here, we deem it unnecessary to go so far as to delete a word or substitute one phrase for another in the statute in order to carry out the legislative intent. However, it is necessary to take care in construing the word "or" if we are to avoid manifestly defeating the intention of the General Assembly.

The General Assembly's use in § 38–41–204, C.R.S. (1982 Repl.Vol. 16A) of the word "or" immediately preceding both oc-

currences of the phrase "minor children" has resulted in semantic and syntactic ambiguity within the statute. For the English word "or" has two counterparts in Latin: (1) "vel" (often referred to as the "inclusive 'or' "), meaning A or B, *or both;* and (2) "aut" (often referred to as the "exclusive 'or' "), meaning A or B, but not both. *R. Dickerson, The Fundamentals of Legal Drafting* 76 (1965).

Unfortunately, the General Assembly did not specifically state whether, in employing the word "or" in § 38–41–204, C.R.S. (1982 Repl.Vol. 16A), it intended the inclusive "or" or the exclusive "or." However, "observation of legal usage suggests that in most cases 'or' is used in the inclusive, rather than the exclusive, sense." *R. Dickerson, supra,* at 77.[1]

■ Here, given the history and legislative intent behind the homestead exemption, and given petitioner's failure to demonstrate that the General Assembly intended the extraordinary interpretation of "or" as exclusive, we hold that the word "or" in the statute in question is to be given its usual inclusive construction. In other words, the statutory phrase "such widow, or husband, or minor children are entitled to the homestead" is the equivalent of "such widow or husband *or* minor children *or both* are entitled to the homestead." Thus, the effect of the language of this statute is that if a person exists in any of the three categories, the homestead right is preserved, without priority of entitlement to the exemption vesting in either named category of persons over the other category of persons.

### V.

■ We have no factual findings to review regarding whether the two minor children were "occupants" within the meaning of § 38–41–203, C.R.S. (1982 Repl.Vol. 16A); *Helkey v. Ashley,* 113 Colo. 175, 155 P.2d 143 (1945); and *Pierson v. Truax, supra.* Accordingly, we affirm the trial court's granting of a homestead exemption to respondent, but reverse the court's summary denial of a homestead exemption rights to the minor children represented by petitioner, and remand the cause for hearings and findings regarding whether, in view of Kimberly's absence from the family home since July 1981, the two minor children met the prerequisite of "occupancy" of the premises as required by the statute and cases cited herein.

The order granting a homestead exemption to respondent is affirmed; the denial of a homestead exemption to petitioner on behalf of the minor children of decedent is reversed, and the cause is remanded for further proceedings consistent with this opinion.

SMITH, J., concurs.

METZGER, J., dissents.

METZGER, Judge, dissenting.

I respectfully dissent.

The majority here has determined that respondent, Dewey F. Dodge, was an "occupant" for purposes of the homestead exemption statute. In my view, neither the facts nor the law supports that conclusion.

The homestead statute, § 38–41–203, C.R.S. (1982 Repl.Vol. 16A), states: "Said property, when so homesteaded, shall only be exempt as provided in this part 2 while occupied as a home by the owner thereof or his family." It has long been the law in Colorado that occupancy of the premises by one claiming a homestead exemption is a necessary prerequisite to enforcement of such a claim. *Helkey v. Ashley,* 113 Colo.

---

**1.** That is, what is generally meant by "or" is that meaning denoted by the Latin "vel." *Burtt, Right Thinking,* note at 134 (3d ed. 1946); 1 *Coffey, The Science of Logic* 285 (2d ed. 1918); *Frye & Levi, Rational Belief* 178 (1941); *Gibson, The Problem of Logic* 135 (1908); *Mace, Principles of Logic* 61 (1933); *Quine, Methods of Logic* 4 (1950). In fact, it simply "is not usual to interpret the 'or' in an alternative proposition as expressing the exclusion of one alternative. That is, 'or' is consistent with 'perhaps both'; [and] the *onus probandi* lies on those who assert the logical interpretation of 'or' should be exclusive." *Stebbing, A Modern Introduction to Logic* 70–71 (6th ed. 1948).

175, 155 P.2d 143 (1945); *Pierson v. Truax,* 15 Colo. 223, 25 P. 183 (1890).

One can "occupy" only one place at a time for purposes of the homestead exemption. "[T]he right of occupancy is something that would have to exist either in toto or be completely nonexistent. Occupancy is a physical thing. It cannot alternately appear and disappear like the Cheshire cat in Alice in Wonderland." *Wallace v. First National Bank,* 125 Colo. 584, 246 P.2d 894 (1952).

Once one ceases to reside on homesteaded property, a presumption of abandonment arises, and the claimant has the burden of overcoming the presumption by clear and definite evidence. *Monte Vista Bank & Trust Co. v. Savage,* 75 Colo. 180, 225 P. 219 (1924). In *Savage,* our Supreme Court held that a vague intention to return perhaps at some future time to reside at the homestead will not preserve the exemption; rather, an intention that is sufficient to rebut the presumption of abandonment must be positive and certain, not conditional and indefinite. Thus, as the *Savage* court stated, for occupancy to continue once the claimant has left the property, "it must appear that the removal was temporary in its nature, made for a specific purpose, with the intention of reoccupying the premises."

Roberta Dodge, the decedent, owned the home in her sole name prior to her marriage to respondent and did not change the title. Thus, respondent had no record interest in the home.

Respondent testified that, in June or July 1981, he "moved out" of the home by agreement with decedent, and established his own residence. He caused the utility bills for Roberta Dodge's home to be changed to her sole name. He neglected to have the propane gas bill for the house transferred, but it was not a monthly bill, as were those for other utilities. He did not recall filling out a change of address form at the post office, but there is no evidence whether he received all his mail at decedent's home.

He set up housekeeping in a mobile home he owned in the area of decedent's home and caused bills for its maintenance to be sent to him. On a few instances, in the fall of 1981, he briefly attempted reconciliation and stayed in decedent's home for a few days at a time. At all other times from June 1981 to decedent's death, he lived in his mobile home.

After they separated, he and decedent attended marriage counseling, hoping to reconcile their differences. However, respondent testified that there was no agreement that he return to the home on a permanent basis, but only that he had hoped to convince decedent that they should reconcile. Indeed, there is no evidence that the parties did reconcile, and respondent testified that he sought counsel for purposes of filing a dissolution of marriage action approximately a week before decedent's death.

The testimony of respondent belies any conclusion that he was an "occupant" for purposes of the homestead exemption statute. Respondent's testimony is replete with his "hopes," his "wishes," and his "anticipation" that he could move back to decedent's home. Nevertheless, he testified that "there had been no agreement .... I had not set a specific date for my return." Nowhere in the record is there any indication that either respondent or decedent had taken any action that would indicate respondent had regained his status as an "occupant" of the homestead.

Thus, in determining that respondent occupied decedent's house for purposes of the homestead exemption, the trial court and the majority have, in my view, misapplied the relevant law to the uncontradicted facts in this case.

Secondly, I dissent because I believe the majority has invaded the province of the General Assembly by rewriting § 38–41–204, C.R.S. (1982 Repl.Vol. 16), the homestead exemption statute. *See Tompkins v. DeLeon,* 197 Colo. 569, 595 P.2d 242 (1979). It has done this by applying tortured logic to arrive at its conclusion that, here, "or" means "or both." While that conclusion

evidences an attempt to achieve an equitable result, the statute, as worded, does not allow such an interpretation.

Having determined that respondent qualified as an "occupant" pursuant to § 38-41-203, C.R.S., the majority ignores the plain language of § 38-41-204, C.R.S., which states:

"When any person dies seized of a homestead leaving a widow, or husband, *or minor children*, such widow, or husband, or *minor children* are entitled to the homestead. In case there is neither widow, husband, nor minor children, the homestead shall be liable for the debts of the deceased." (emphasis added)

If respondent qualifies as an occupant, as the majority concludes, then he should be awarded the entire homestead exemption. If he does not, then decedent's children should be awarded the exemption. A fair and plain reading of § 38-41-204 admits of no other interpretation.

Nor does the majority interpretation further the purpose of the statute. If respondent were responsible for the care of decedent's minor children, then he would be entitled to the exemption to preserve the "family home." *Wallace, supra.* But here respondent has no responsibility for the care of decedent's minor children. There is no "family" whose home will be protected by awarding respondent the exemption.

The net result of the majority's determination is to allow both the respondent and the minor children to be entitled to assert homestead exemptions, until the "homestead estate terminates." Consequently, administration of this relatively modest estate can only be a procedural and financial nightmare for all participants. Indeed, the most likely effect of the majority's pronouncement here is that it will echo through the trial and appellate courts of this state until it dissipates the funds of all concerned.

Moreover, the majority's ruling may operate to thwart the desires of the testator who intended that all the proceeds of her sole significant asset were to go to her children, rather than to her estranged husband who had contributed nothing towards the purchase of the property and had no claim of title to it.

I would reverse the trial court's order, and award the homestead exemption to the children.