*Waldheimer & Jenkins,* and *L. C. Rockwell,* for plaintiff in error.

*J. H. Brown,* for defendant in error.

————▶●◀————

## BARNETT *et al. v.* KNIGHT *et al.*

*(Supreme Court of Colorado, May 2, 1884 — Error to the County Court of Arapahoe County.)*

1. HOMESTEAD EXEMPTION is entirely the creature of statute; but the statute is not in derogation of the common law, since at common law the creditor had no right to sell the debtor's land. Hence the rule that these statutory provisions are to be liberally construed, for the purpose of giving effect to the beneficent object in view, has been properly established.

2. SAME—CONSTRUCTION OF THE COLORADO STATUTE. Under the Colorado statute, the homestead is not exempt until the owner elects to make it so, which election is evidenced by so endorsing upon the margin of the record of the deed. Such endorsement being made, the homestead, to the extent of $2,000 in value, becomes exempt from execution or attachment upon any indebtedness arising after February 1, 1868. The householder is in ample time if he records this election before a lien attaches in favor of a creditor whose debt arose subsequent to that date.

3. SAME — CONSIDERATION — FUTURE SUPPORT — INDEBTEDNESS OF GRANTOR—STATUTE OF FRAUDS. If a *bona fide* grantee pays full value for the property, the additional condition of future support does not concern creditors, and therefore works no injury to them. As to exempt property, there are within the statute of frauds no creditors; so that the sale of a homestead is no fraud upon the rights of creditors of the grantor—the same not being subject to their debts. The exemption law and statute of frauds are in *pari materia*, and must be construed together.

HELM, J. The important assignment of error in this case is: "That the complaint doth not set forth facts sufficient to constitute a cause of action."

There is nothing in the record before us upon which we can predicate the conclusion that the conveyance from Mrs. Carr to defendants in error is void as to plaintiff in error, on the ground of intentional fraud. The uncontradicted averments of the complaint are our only source of information upon this subject; there is nothing in these from which we can justly draw the inference that she made the sale with intent to hinder, delay or defraud her creditors; neither is there anything to show that defendants in error, who were purchasers for a valuable consideration, had notice of such intent, even if it existed. Yet both of these facts must concur before the sale can be avoided on this account.

The question of fraud in fact may, therefore, be eliminated from this case; is there fraud in law of which plaintiff in error may take advantage? His counsel contend that there is; they assert: *First*, that as against the claim of plaintiff in error, the effort of Mrs. Carr to secure the benefit of the homestead exemption act was of no avail; for his demand was contracted before she caused the word "homestead" to be entered of record in compliance with law. And they argue, *secondly*, that since part of the consideration from defendants in error to her for the property was future assistance towards her support, the transaction was tainted with fraud in law *per se*, as to her existing creditors.

Other matters are discussed in the briefs, but we deem it unnecessary to extend our inquiry beyond these two questions. The first may be re-stated as follows: Can a debtor avail himself of the bounty offered by our homestead exemption statute as against an existing indebtedness which has not been reduced to judgment nor become a statutory lien upon the exempted premises, by attachment or otherwise, where allowing the exemption will leave him insolvent?

We are not aware of any direct adjudication of this precise question under similar statutes. It is by no means free from difficulty and doubt; that strong and logical arguments can be presented on both sides, is demonstrated by the briefs in this case.

Section 1631 of our General Statutes reads as follows: "Every householder in Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the sum of

$2,000, exempt from execution and attachment, arising from any debt, contract or civil obligation entered into or incurred after the first of February in the year of our Lord one thousand eight hundred and sixty-eight." And section 1632 is as follows: "To entitle any person to the benefit of this act, he shall cause the word 'homestead' to be entered of record in the margin of his recorded title to the same, which marginal entry shall be signed by the owner making such entry and attested by the clerk and recorder of the county in which the premises in question are situated, together with the date and time of day upon which such marginal entry is so made."

We do not agree with counsel for plaintiff in error in their argument that the latter section was enacted for the purpose of giving notice, and securing protection to those dealing with the householder and extending credit to him. If we did, the conclusion arrived at by them would inevitably follow; for if the Legislature prescribed the recording for the purpose of protecting parties with whom the claimant deals, the deduction is irresistible that it would not avail as to prior debts; more ingenuity than we possess would be required to demonstrate how the creditor is benefited by a notice of this kind given him after he has extended the credit.

The key to a solution of the problem presented is found in the purpose and language of the entire act itself. Two governing principles underlie all homestead legislation:

*First*—The beneficent design of protecting the citizen householder and his family from the dangers and miseries of destitution consequent upon business reverses, or against calamities from other causes; and,

*Second*—The sound public policy of securing the permanent habitation of the family, and cultivating the local interest, pride and affection of the individual, so essential to the stability and prosperity of a government.

Homestead exemption is entirely the creature of statute, but the statute is not in derogation of the common law; for at common law, the creditor had no right to sell the debtor's land; (Thompson's Homesteads and Exemptions, Sec. 2 and note,) and the rule is fully established that the statutory provisions are to be liberally construed for the purpose of giving effect to the principles above named.

Many of the States have extended this bounty to the householder without restriction or qualification, save that of visible occupancy and use; a few, like our own, have seen fit, for excellent reasons, to require of him, in addition to occupancy, an election as to whether or not he will accept the favor offered.

Section 1631 above mentioned, makes no reference to general indebtedness, except that its operation is confined to executions and attachments upon such liabilities as accrue after a certain date; it bestows upon the debtor the privilege of holding his homestead to the extent of $2,000 in value, "exempt from *execution and attachment.*"

Section 1632 substantially declares that until he records his acceptance of the bounty, his home, like his other realty, shall be subject to "execution and attachment." There is nothing in either or in any other provision of the act, which, in our judgment, justifies the conclusion that the Legislature intended to declare that he must make this election before incurring the debt. That body simply say to him: "Prompted by a desire to protect and benefit you and your family, and also to advance the public welfare, we offer this bounty to you; but we do not force you to accept it, and if you do not record your acceptance before an attachment or execution lien is secured in favor of your creditor, such lien shall have preference."

By saying to him that he must record his notice of acceptance, the Legislature did not intend to discriminate against the premises upon which he resides; they did not intend to give his creditor a right, lien, or claim against the same prior to such notice of acceptance, which did not extend to his other realty; he may, notwithstanding his debts, incumber, sell and dispose of his home in the same manner as any other lands to which he holds title; the *bona fide* purchaser or incumbrancer for valuable consideration, takes the home or residence entirely free from claim or objection on the part of a mere general creditor; and this is true, even if such purchaser is aware, when he makes the purchase, of the vendor's indebtedness, and of his insolvent condition.

We think that, under our statute, the householder is in ample time if he records this election before a lien attaches in favor of his creditor.

It is very true that an act of the Legislature conferring the

privilege of a homestead exemption as against debts incurred prior to its passage, is absolutely void; such an act is in clear violation of the inhibition of both Federal and State constitutions against impairing the obligation of contracts. The right of the creditor, under the statutes, in that behalf existing, to look to all of the debtor's realty for payment, is said to be a part of his remedy; the remedy prevailing " when and where the contract is made and is to be performed, is a part of its obligation, and any subsequent law of the State which so affects the remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is therefore void." *Edwards* v. *Kearzey,* 6 Otto, 607; *Gunn* v. *Barry,* 15 Wallace, 610.

But that is a very different question from the one now under consideration. This precise constitutional objection appears to have been in the legislative mind when our homestead law was adopted; for, although it was approved on the tenth day of January, 1868, the exemption was confined to " debts, contracts, or civil obligations entered into or incurred after the first of February " following.

Our conclusion above stated does not work injustice to the creditor; he knows of the homestead statute when he gives the credit; he is aware that the debtor is offered the privilege of indicating his election to claim the exemption at any time; and that if this is done before he procures a lien thereon, the homestead, to the extent of two thousand dollars in value, will be beyond his reach; he is no more warranted in relying upon his debtor's declining to avail himself of this privilege, than upon his refraining from selling or incumbering his property. Under these circumstances, it cannot be said that he is wronged, if after the credit is given, his debtor records his election to claim the exemption; nor can the position be maintained that the obligation of his contract is in any way impaired thereby.

We pass from this subject to a consideration of counsel's second proposition, viz: Is the conveyance to defendants in error void as to plaintiff in error, because part of the consideration therefor was an agreement to aid in the future support of their grantor?

We are not disposed to question the correctness of the general legal doctrine upon which counsel rely; it appears to be

sound and is supported by a strong array of authority. It has been formulated as follows: "An agreement to support the debtor or his family, is a valuable consideration, but is not sufficient to support the transfer when the grantor is insolvent." Bump on Fraudulent Conveyances, 216 and cases cited.

The same author declares that: "The gist of the objection consists, not in the amount to be paid in future support, but in the fact that the promise of future support forms part of the consideration as an inducement for the transfer." *Ibid*, 217.

It is not perfectly clear under the authorities that this doctrine is applicable to all cases where the purchaser acts in good faith, has *no knowledge of the creditor's existing debts*, and the agreement for future support forms but a small part of the consideration, the balance thereof being valuable and being actually paid at the time of the transfer; and more doubt is cast upon the application of the doctrine to such cases in this State by the peculiar wording of our statute of frauds. It is, however, unnecessary for us to determine this question, though counsel invite our attention thereto.

A sale, such as the one disclosed by this record, is good, except when challenged by a person upon whose rights it operates injuriously; a creditor who has not been wronged cannot be heard to complain; the wrong and injury are the foundation of the rule, and if these do not exist, the rule itself is inapplicable.

Therefore, it is held that if the *bona fide* grantee pays full value for the property otherwise, the additional consideration of future support does not concern creditors. Bump on Fraudulent Conveyances, 217; *Slater* v. *Dudley*, 18 Pick., 373; *Albee* v. *Webster*, 16 N. H., 362.

So also, if the grantor retains enough property to pay all his debts, a few of the cases hold that the creditor cannot complain of a provision in the sale for future support. Bump, 218, and cases cited.

In the foregoing discussion we concluded that the homestead exemption right held by Mrs. Carr was good as against the demand of plaintiff in error, though his assignor was an existing general creditor when she recorded her notice claiming the same. There is nothing in the record advising us of any act on her part forfeiting this exemption privilege. At

the time she sold to defendants in error, neither plaintiff in error nor his assignor could have taken the property under execution or attachment. The entire value being less than half the amount of the homestead allowance, the whole property was beyond the reach of an existing creditor; such a creditor had no interest therein, and having no interest it cannot be said that he was wronged or injured by her sale. If the premises were beyond the reach of plaintiff in error in satisfaction of his debt, what mattered it to him whether she retained the title or sold or incumbered the property. Upon similar reasoning to this it is held that " as to exempt property there are, within the meaning of the statute of frauds, *no creditors.*" The exemption law and statute of frauds "are *in pari materia*, and must be construed together." The former controls the latter as to the property specified, and in the disposition of exempted property there can be no fraud upon the creditors. Thompson on Homesteads and Exemptions, Secs. 411, 412, and cases; Bump on Fraudulent Conveyances, p. 242, and cases cited; also p. 211 and 215.

Of course when the value of the property exceeds the exemption allowance, the creditor is interested; yet, in such a case, it by no means follows that if a conveyance were set aside for fraud, at the suit of creditors, the debtor would be estopped from still claiming and holding the exemption privilege acquired before the fraudulent transfer. Thompson on H. and E., Sec. 408 and cases cited.

Examination thereof demonstrates that the spirit as well as the letter of our entire homestead act is in harmony with the views we have adopted upon both of the foregoing questions.

Section 1634 gives the benefit of the homestead to a surviving widow, husband or minor children; section 1637 provides for cases where the premises exceed in value the exemption allowance of $2,000; the creditor may sell the same under his execution, but he is required to pay the debtor this amount from the proceeds; he is only entitled to apply to the discharge of his demand, the surplus, after paying all costs and $2,000 to the exemption claimant; if there be not enough proceeds to do this he must make up the deficiency from his private funds. Section 1638 authorizes the debtor to sell his homestead and invest the proceeds therefrom in another; the new homestead

so acquired is exempt from execution or attachment for debts existing before the sale; the *bona fide* purchaser for valuable consideration, of the old homestead premises, takes the same entirely free from liens on account of judgments or other claims against his grantor existing at the time of the sale.

This section does away with every doubt as to the debtor's right to dispose of his homestead; the last clause thereof puts at rest all uncertainty as to the effect of a judgment lien upon the homestead. On this subject counsel cite two lines of decisions, which have been rendered in the absence of such a statutory provision: *First,* those holding that no judgment lien attaches to the homestead; and, *second,* those which declare that such lien does attach, but is simply held in abeyance till sale of the premises, or forfeiture of the right. Important consequences flow from the distinction, which it is not necessary, in view of our statute, for us to state or consider. But the former view is sustained by the weight of authority and the better reason; and it has been expressly recognized by legislation in at least two of the States, where the latter was first announced by the Supreme Court. See Thompson, Sec. 390, *et seq.,* and cases cited.

We think plaintiff in error is not in position to claim in this case, the benefit of the general doctrine declaring a conveyance fraudulent and void as to creditors, which is made partially in consideration of future support to the insolvent grantor.

The complaint states facts sufficient to constitute a cause of action.

The judgment will be

*Affirmed.*

*Wells, Smith & Macon,* for plaintiff in error.
*Benedict & Phelps,* for defendants in error.