2014 COA 16

SHIGO, LLC, a Colorado limited liability company; George Shipp; Victoria Shipp; and Trent Production Company Money Purchase Pension Plan and Trust, Plaintiffs–Appellees,

v.

Mary Ann HOCKER, Defendant–Appellant.

**Court of Appeals No. 13CA0094**

Colorado Court of Appeals, Div. VII.

Announced February 27, 2014

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Robinson Waters & D'Orisio, PC, Kimberly Breutsh, Stephen Waters, Denver, Colorado, for Plaintiffs–Appellees

Lyons Gaddis Kahn Hall Jeffers Dworak & Grant, PC, John Wade Gaddis, Longmont, Colorado, for Defendant–Appellant

Opinion by JUDGE FOX

¶ 1 This case addresses whether the protection provided by Colorado's homestead exemption statute, §§ 38–41–201 to –212, C.R.S.2013 (the homestead exemption), covers water rights represented by shares in a mutual ditch company. . Defendant–Appellant Mary Ann Hocker (Hocker) appeals the district court's judgment denying her request to exempt her water rights from levy and execution by creditors. We conclude that the homestead exemption may protect those rights. Therefore, we reverse the district court's judgment and remand the case with directions.

## I. Background

¶ 2 Plaintiffs–Appellees Shigo, LLC, George Shipp, Victoria Shipp, and Trent Production Company Money Purchase Pension Plan and Trust (collectively Plaintiffs), sued Hocker in 2010 for fraud, civil conspiracy, civil theft, violation of the Colorado Organized Crime Control Act, and breach of fiduciary duty. Plaintiffs claimed that Hocker had operated a Ponzi scheme that defrauded them of more than six million dollars. Hocker failed to defend the action, and the district court entered a default judgment against her. The parties then stipulated that Hocker would pay Plaintiffs damages amounting to $4,400,000.00 plus interest.

¶ 3 For nearly a year after the court entered the judgment against Hocker, Plaintiffs were unable to collect. In an attempt to reach some of Hocker's assets, they served Hocker with a writ of execution seeking to levy Hocker's shares in the Highland Ditch Company (Highland). Hocker owns an undivided one-half interest in two and three-quarter shares of Highland stock. The Highland shares represent Hocker's right to use water that runs through a mutually owned ditch, a branch of which leads to a pond on the 35–acre farm that Hocker owns with her husband.

¶ 4 The first three-quarters of a share of Highland stock were included in the deed to the farm when Hocker bought the property in 1999. Hocker purchased the remaining two shares in 2002, and those shares are not noted on the deed. Plaintiffs claimed that they are entitled to levy the Highland shares to satisfy the judgment.

¶ 5 Hocker protested, and filed a claim under the homestead exemption asserting that the shares could not be levied. A homestead is real property—including "a farm consisting of any number of acres"—owned by a debtor and occupied by the debtor or a member of her family. § 38–41–205. If property qualifies as a homestead, it is, within monetary limits, exempt from levy and execution by creditors. § 38–41–201(1). Hocker argued that the Highland shares provided her with the water necessary to irrigate her farm, and that they are therefore part of the "homestead" that the statute shields from creditors.

¶ 6 The district court held a hearing on the matter. At the conclusion of the hearing, the court determined that, while a farm may be a "homestead" protected by the act, the term "farm" as used in the act includes only "the dirt and the structure itself," not the water rights attached to the farm. Therefore, the court concluded, the exemption "does not apply to water stock certificates," and "does

not preclude the seizure and levy of the Stock Certificates." The court denied Hocker's claim of exemption. Hocker now appeals the trial court's judgment.

## II. Standard of Review

¶ 7 This case presents a question of the proper interpretation of Colorado's homestead exemption. The proper interpretation of a statute is a question of law which we review *de novo. Larson v. Sinclair Transp. Co.,* 2012 CO 36, ¶ 7, 284 P.3d 42; *City & Cnty. of Denver v. Eat Out, Inc.,* 75 P.3d 1141, 1143 (Colo.App.2003). Our primary task when interpreting a statute is to give effect to the intent of the General Assembly. *Larson,* ¶ 8. We begin our analysis by looking to the plain language of the statute. *Sperry v. Field,* 205 P.3d 365, 367 (Colo. 2009). If the statute is clear and unambiguous on its face, we need look no further. *Id.* But if the language of the statute is ambiguous, we look "to the statute's legislative history, the consequences of a given construction, and the overall goal of the statutory scheme to determine the proper interpretation of the statute." *Id.*

## III. Discussion

¶ 8 The question we must address is whether, by including protection for a "farm" in the homestead exemption, the General Assembly intended to protect the water rights attached to the farm—represented in this case by shares of stock in a mutual ditch company. The district court concluded that, while "water rights are part of the agriculture," they "are not inherently part of a farm," and therefore are not protected by the

homestead exemption. We disagree with the district court's interpretation.

¶ 9 The homestead exemption was designed to spare homestead property from seizure to satisfy creditors. *Barnett v. Knight,* 7 Colo. 365, 370–72, 3 P. 747, 749 (1884). It ensures that a householder and her family will be able to keep their home regardless of their financial condition. *Woodward v. People's Nat'l Bank,* 2 Colo. App. 369, 31 P. 184 (1892). The exemption is to be construed broadly to meet that purpose. *Knight,* 7 Colo. at 370–72, 3 P. at 749. But the homestead exemption statute protects more than just the debtor's house; section 38–41–205 states that the homestead may also include a "lot or lots" and "a farm consisting of any number of acres," so long as that property meets the occupancy requirements and monetary limits of the statute. The statute does not define "farm," and it makes no mention of water rights.[1] But the fact that the legislature defined the homestead to include farms is significant.

### A. Farm as Used in the Homestead Exemption

¶ 10 The word "farm" connotes more than an empty tract of dirt. A farm is generally understood to be a tract of land used for agricultural purposes. *See, e.g.,* § 39–1–102(3.5), C.R.S.2013 (" 'Farm' means a parcel of land which is used to produce agricultural products.")[2]; *see also Webster's Third New International Dictionary* (2002) (a farm is "any tract of land devoted to agricultural purposes"). In our state's semi-arid climate, land is often not suitable for

---

1. In our view, the legislative history does not tell us how the legislature intended us to construe the word "farm." The legislative history of the 1982 amendments to the statute indicates only that the legislature intended to provide broad homestead protections. *See* Hearing on H.B. 1060 Before the H. Local Gov. Comm., 53rd Leg., 2d Reg. Sess. (Colo. Jan. 20, 1982) (Representative Kopel explaining that the statute should be clarified to cover all property that is used as a homestead, regardless of whether it is located in a city, in a town, on a farm, or in an unincorporated area). However, the legislature's persistent desire to avoid a narrow interpretation of the homestead exemption supports our view that the homestead exemption for a farm protects more than dirt and buildings. That the term

"farm" was added to ensure that properties in unincorporated areas were granted protection does not answer the question of whether certain items—like a water right—within the farm are also protected.

2. The definition of a term in one set of statutes does not necessarily indicate the term's meaning in statutes in a different area. *See, e.g. Bertrand v. Bd. Of Cnty. Commis.,* 872 P.2d 223, 228 (Colo.1994). Here, however, there is no logical reason to ignore the definition of "farm" in the tax statute, § 39–1–102(3.5), where that definition is consistent with the dictionary definition of the term "farm."

agricultural use unless it is irrigated. Indeed, irrigation water is often the thing that distinguishes a fertile farm from a barren lot or a fallow field. Many farms in Colorado would cease to operate as farms if they were deprived of water. As Chief Justice Moses Hallett observed in *Yunker v. Nichols*:

> In a dry and thirsty land it is necessary to divert the waters of streams from their natural channels, in order to obtain the fruits of the soil, and this necessity is so universal and imperious that it claims recognition of the law. The value and usefulness of agricultural lands, in this territory [Colorado before statehood] depend upon the supply of water for irrigation.

1 Colo. 551, 570 (1872), *superseded on unrelated grounds by the Colorado Constitution, as stated in Stewart v. Stevens*, 10 Colo. 440, 15 P. 786 (1887). Thus, the fact that the General Assembly saw fit to make farms part of the homestead suggests that it intended to protect more than just dirt and buildings.

¶ 11 If the legislature had intended to allow creditors to strip a debtor's farm of the very thing which distinguishes it from a barren plot of dirt, it would not have included "farm" in the homestead definition. The protection for "a house and a lot or lots," § 38–41–205, would encompass the farmhouse where the debtor resides and the plot of land on which it sits. That protection alone would have been sufficient to achieve the legislature's goal of providing a home for the debtor. *Woodward,* 2 Colo.App. 369, 31 P. 184. But the legislature saw fit to provide an additional protection. Nothing in the statutory scheme suggests that the legislature's inclusion of the term "farm" was simply meant as surplussage to reiterate the protection for lots.

¶ 12 But even if the legislature's only purpose in including the word "farm" in the homestead exemption was to reflect, as the dissent suggests, a distinction between urban and rural land, we see no reason to deprive any homestead property, urban or rural, of its appurtenant water rights. There is no provision in the statute for splitting up homestead property. *See, e.g., In re Wells,* 29 B.R. 688, 690 (Bankr.D.Colo.1983). A debtor is not required to strip homestead property of its timber or soil—though each of those things may be transferred independently of the homestead—and sell them in satisfaction of her debts. *Id.* The same should be true of the homestead's appurtenant water rights. We see no more reason to require a debtor to dehydrate her homestead than to deforest the homestead or strip it of its soil to satisfy her creditors. Therefore, we conclude that the homestead exemption for a "farm" includes not just the farm's soil, but also the water rights appurtenant to the land.

## B. Only Appurtenant Water Rights Qualify for Homestead Protection

¶ 13 But it does not necessarily follow that the homestead exemption protects all of Hocker's Highland shares from levy and execution. Water rights may or may not be appurtenant to the land. *Hastings & Heyden Realty Co. v. Gest,* 70 Colo. 278, 281–84, 201 P. 37, 39–40 (1921) (recognizing that water rights are treated as appurtenant to land, and are therefore conveyed with the land even where the deed to the land is silent as to water rights, if they are "necessary to the beneficial use and enjoyment to the land conveyed."). Whether they are appurtenant depends on whether they are necessary to the use and enjoyment of the land. *Id.* Water rights used for domestic or irrigation purposes may, in some cases, become appurtenant the land. *See id.* at 283, 201 P. at 39–40 ("In the case at bar it is undisputed that the water right involved was necessary to the beneficial use and enjoyment of the land. The land was not susceptible to cultivation without water. . . . [T]he water was and is appurtenant to the land."); *see also Kinoshita v. N. Denver Bank,* 181 Colo. 183, 185, 508 P.2d 1264, 1265 (1973) (approving trial court's finding that irrigation water was appurtenant to the land on which it was used). Only water rights that are appurtenant to a tract of land are treated as part of the land. *See, e.g., Kinoshita,* 181 Colo. at 185–87, 508 P.2d at 1266. Therefore, only water rights that are appurtenant to Hocker's homestead property are include in the homestead.

¶ 14 The district court's findings on the matter are insufficient to allow us to conclude that Hocker's Highland shares represent water rights that are appurtenant to her land. At the hearing on her claim of exemption, Hocker testified generally that she uses her Highland shares to irrigate her land. But there was no fact finding regarding how much of the land is devoted to agricultural operations, how much water is necessary to sustain those operations, or how much water Hocker uses annually to irrigate her farm. Therefore, we are unable to determine whether the water rights represented by the Highland shares are necessary to the use and enjoyment of the land in question as a farm. Accordingly, it is unclear what portion of the Highland shares is appurtenant to Hocker's land, and we must remand the case to the trial court for findings on that matter.

¶ 15 Plaintiffs argue, however, that even if the definition of the homestead included appurtenant water rights, Hocker's Highland shares are not protected because there is a distinction between water rights and shares of stock in a mutual ditch company. We disagree.

¶ 16 Shares of stock in a mutual ditch company represent water rights. *Jacobucci v. Dist. Court*, 189 Colo. 380, 387–88, 541 P.2d 667, 672 (1975). Unlike shares of ordinary corporate stock, shares of ditch company stock constitute a real property interest in the water they represent. *Id.* The benefit derived from holding such stock is the right to use the water it represents, "the water being divided pro-rata according to the number of shares of stock held by each shareholder." *Id.* at 387, 541 P.2d at 672 (citing *Kendrick v. Twin Lakes Reservoir Co.*, 58 Colo. 281, 144 P. 884 (1914), and

*Billings Ditch Co. v. Indus. Comm'n*, 127 Colo. 69, 253 P.2d 1058 (1953)). The ownership of the stock is "merely incidental to the ownership of the water rights." *Id.* Therefore, shares of stock in a mutual ditch company represent water rights, and we see no reason to treat those rights differently than we would treat water rights recorded in a different medium.[3]

¶ 17 On remand, the district court may, in its discretion, hear new evidence on the issue or decide the matter based on the evidence already presented. It may find that all of Hocker's Highland shares, or some of them, or none of them represent water rights that are appurtenant to her land. If the district court determines that water rights represented by the Highland shares are appurtenant to Hocker's land, it should conclude that those rights are part of her farm for purposes of the homestead exemption and grant Hocker's claim of exemption with respect to the necessary shares. If the water rights are not appurtenant, they should not be considered part of the farm, and they are not exempt from levy and execution by creditors.

¶ 18 The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

JUDGE STERNBERG * concurs.

JUDGE BOORAS dissents.

JUDGE BOORAS, dissenting.

¶ 19 I respectfully dissent from the majority's decision that water rights evidenced by shares in a mutual ditch company qualify as exempt from levy and execution by creditors under Colorado's homestead exemption statute. The majority reasons that by including a "farm" as property subject to the homestead exemption, the General Assembly in-

---

**3.** There are circumstances which may warrant different treatment of ditch stock. For example, if the owner of ditch company stock does not receive water from the ditch company, or if the water received is not dependent on the number of shares owned, the stock may represent an interest in the company itself rather than in the water supplied by the ditch. *See First Nat'l Bank v. Hastings*, 7 Colo.App. 129, 42 P. 691 (1895); *see also Oligarchy Ditch Co. v. Farm Inv. Co.*, 40 Colo. 291, 88 P. 443 (1906). Here, however, the parties seem to agree that Hocker purchased the Highland stock so that she could have the benefit of the water rights the stock represents, and that she receives water in proportion to the amount of stock she owns. Therefore, Hocker's Highland shares represent water rights, and those rights *may* become appurtenant to her land.

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3), and § 24–51–1105, C.R.S.2013.

tended to include irrigation water rights that are necessary to grow crops. I disagree that the statutory homestead exemption was intended to shield mutual ditch company stock shares.

## I. Whether Water Rights in Colorado Are "Appurtenant" to Land

¶ 20 The majority concludes that a farm that is subject to the homestead exemption includes "water rights appurtenant to the land." In Colorado, a water right is generally not appurtenant to land, and thus, can be bought, sold and transferred separately from land. *E. Ridge of Fort Collins, L.L.C. v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 973 (Colo.2005). However, the term "appurtenant" is sometimes used in connection with water rights in cases involving transfers of land.

¶ 21 For example, transfer of water rights along with deeded land where the deed is silent as to the water rights depends on whether they are necessary and essential for the beneficial use of the land, or, in other words, "appurtenant." Generally, where a deed expressly transfers only a portion of water rights with land, the grantor retains the portion of the water rights that is not referenced. *See Arnett v. Linhart,* 21 Colo. 188, 190, 40 P. 355, 355 (1895) ("[W]hether a deed to land conveys the water right depends upon the intention of the grantor, which is to be gathered from the express terms of the deed; or, when it is silent as to the water right, from the presumption that arises from the circumstances, and whether such right is or is not incident to and necessary to the beneficial enjoyment of the land."). However, where a deed is silent, whether water rights are transferred along with the land depends on the use of the water and whether the water rights are necessary and essential for the beneficial use of the land. *Kinoshita v. N. Denver Bank,* 181 Colo. 183, 188, 508 P.2d 1264, 1267 (1973). If a court finds that water rights are "appurtenant" to the real property conveyed, a presumption arises that a transferor intended to include the water rights among the rights conveyed. *Means v. Pratt,* 138 Colo. 214, 220, 331 P.2d 805, 808 (1958) (where a claim to water rights has been consistently asserted and the claimed water has been used upon the land for nearly fifty years, a presumption arises that the grantor intended to convey by deed any and all water rights incident to and necessary to the beneficial enjoyment of the deeded land). Similarly, the concept has been applied in probate proceedings where an unambiguous will was silent as to whether water rights were to be transferred with specifically devised land. *Matter of Estate of Palizzi,* 854 P.2d 1256, 1260 (Colo.1993) (trial court may imply a devise of the water rights after examining all of the surrounding facts and circumstances of the case and evaluating whether the water rights are necessary for the beneficial use of the land).

¶ 22 However, this use of the word "appurtenant" does not mean that the water rights are to be treated as "part of the land," as the majority states. Even where water is necessary for beneficial use, an owner can sell land, but retain water rights by expressly stating so in the deed or instrument of transfer. *Arnett,* 21 Colo. 188, 40 P. 355. Because the instant case does not involve the conveyance of land which may or may not include water rights, the cases relied on by the majority characterizing water rights as "appurtenant to land" are inapposite.

## II. Purpose of the Colorado Homestead Exemption

¶ 23 The homestead exemption statute was designed to "secure to the householder a home for himself and family regardless of his financial condition, whether solvent or insolvent." *Woodward v. People's Nat'l Bank,* 2 Colo.App. 369, 371, 31 P. 184, 184 (1892). Colorado courts have regarded the homestead as a property right, the purpose of which is to preserve a right of occupancy, and to preserve family habitation. *In re Pruitt,* 829 F.2d 1002, 1004 (10th Cir.1987). The Colorado Supreme Court has described the homestead exemption as providing protection for "premises" occupied as a home. *Wright v. Whittick,* 18 Colo. 54, 58, 31 P. 490, 491 (1892).

¶ 24 The homestead can consist "of a house and lot or lots or of a farm consisting of any number of acres." § 38–41–205, C.R.S.2013.

Additionally, the homesteaded property is only exempt while occupied as a home by the owner or his or her family. § 38–41–203, C.R.S.2013.

¶ 25 Although water rights are characterized as real property in Colorado, they are usufructuary rights that are obviously not capable of being occupied as a home. So the water rights themselves do not qualify for the homestead exemption.

### III. Operation of Homestead Property as a "Farm"

¶ 26 The majority reasons that because "a farm" can be a homestead, water rights that are necessary to allow a property to "operate as a farm" must be included in a homestead exemption. The majority recognizes that the term "farm" is not defined in the homestead exemption statute, but adopts the fairly restrictive definition in section 39–1–102(3.5), C.R.S.2013, pertaining to taxation. Section 39–1–102(3.5) defines "farm" in the taxation context as "a parcel of land which is used to produce agricultural products that originate from the land's productivity for the primary purpose of obtaining a monetary profit." In this context, the supreme court has interpreted "from the land's productivity" as requiring a connection between the agricultural product and the soil in order for a parcel to receive favorable tax treatment. See Welby Gardens v. Adams Cnty. Bd. of Equalization, 71 P.3d 992, 1000 (Colo.2003) (greenhouse is not considered a "farm" under section 39–1–102(3.5) because there must be some connection between the agricultural product and the soil itself in order to qualify as "originating from the land's productivity").

¶ 27 Operation as a "farm," however, does not necessarily involve irrigated crops. In different contexts other statutes provide a much broader definition of "farm." For example, section 8–3–104(11)(f), C.R.S.2013, and section 8–70–109(2), C.R.S.2013, in the context of labor and industry, provide that "farm" includes "stock, dairy, poultry, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses, orchards, and other structures used for the raising of agricultural or horticultural commodities." See also § 4–9.5–103(8), C.R.S.

2013 (in the context of the uniform commercial code, defining " '[f]arm product' " as "an agricultural commodity, a species of livestock used or produced in farming operations, or a product of such crop or livestock in its un-manufactured state," and listing numerous examples of plants and animals).

¶ 28 Thus, it is incorrect to assume that the use of the term "farm" necessarily pertains to growing irrigated crops, outside of the taxation context. Simply providing that the homestead exemption can apply to "a farm" does not mean that the General Assembly's intent was to facilitate growing of crops on the homestead property.

¶ 29 Furthermore, due to the nature of water rights in Colorado, ownership of a water right does not guarantee that enough water pursuant to that right will be available for irrigation of a particular tract of land. Kobobel v. State, Dep't of Natural Res., 249 P.3d 1127, 1134–35 (Colo.2011). The risk of curtailment is inherent to Colorado water rights holders. Id. at 1135. Therefore, exempting a water right from creditors does not guarantee that the character of a homestead as irrigated farm land will be maintained from year to year.

¶ 30 Comparing the Colorado homestead exemption statute to homestead exemption statutes of other states, the use of the word "farm" appears to simply reflect an urban/rural distinction. See Roche v. Du Bois, 223 Wis. 438, 271 N.W. 84, 86 (1937) (noting that the word "agricultural" is used in homestead exemption statute as a distinction between rural and urban land, rather than in a technical sense), overruled on other grounds by Ohio Cas. Ins. Co. v. Holz & Holz, Inc., 24 Wis.2d 587, 129 N.W.2d 330 (1964). This distinction is consistent with statutes that, historically, viewed a "lot" as a subdivided unit in a town or city as opposed to "agricultural land." See Town of Sheridan v. Nesbitt, 123 Colo. 121, 124, 227 P.2d 1000, 1001 (1951) (discussing statutes for disconnecting agricultural land from incorporated town, which require, among other things, that no part of the agricultural land area has been "platted into lots or blocks" as part of the town); People v. Milan, 89 Colo. 556, 565–66, 5 P.2d 249, 253 (1931) (noting amendment to

1915 statute which had provided "all lands platted or subdivided into residence or business lots shall not be considered agricultural lands").

¶ 31 The legislative history reflects this simple urban/rural distinction. A previous version of section 38–41–205 allowed the homestead exemption for "a house and lot or lots, in any town or city, or of a farm consisting of any number of acres." *See In re Wallace's Estate,* 125 Colo. 584, 590, 246 P.2d 894 (1952). A 1982 amendment struck the words "in any town or city" in order to insure that land in an unincorporated area that was not being used for farming would be included. See Hearing on H.B. 1060 Before the H. Local Gov. Comm., 53d Leg., 2d Reg. Sess. (Colo. 1982).

¶ 32 Thus, the reference to "a house and lot or lots" or "a farm consisting of any number of acres" appears to clarify that the exemption does not pertain only to the house, but also to the surrounding land, reflecting the relative sizes of urban and rural homesteads; not to serve as an additional protection for farmland, as such.

IV. Plain Language of Section 38–41–205

¶ 33 Notably, exemption statutes in some states specifically include water rights. *See* Utah Code Ann. § 78B–5–503(4)(a) (West 2013) ("water rights and interests, either in the form of corporate stock or otherwise, owned by the homestead claimant are exempt from execution to the extent that those rights and interests are necessarily employed in supplying water to the homestead for domestic and irrigating purposes"); Idaho Code Ann § 11–605(7) (West 2013) (including as exemption of personal property from attachment or levy "[a] water right not to exceed one hundred sixty (160) inches of water used for the irrigation of lands actually cultivated by the individual"). As in these states, had the General Assembly intended to protect irrigation water rights under the Col-

orado homestead exemption, it could have done so. But it did not.

¶ 34 Additionally, a separate statute provides exemptions from levy and sale under a writ of attachment or writ of execution for various kinds of property, such as household goods and tools used in a gainful occupation. *See* § 13–54–102(1), C.R.S.2013.[1] Again, the General Assembly did not include irrigation water rights in these statutory exemptions.

¶ 35 The majority reasons that water rights should not be "separated" from homestead property because debtors are not required to "strip homestead property of its timber, or soil." However, soil, trees, and grass are generally considered part of the land surrounding the house that constitutes the homestead lot or acreage. *See United States v. Holmes,* 646 F.3d 659, 661 (9th Cir.2011) (the destruction of "land" includes vegetative growth, bodies of water, rock formations, and fossils that are found on the earth). In Colorado, water appropriation rights are not part of a property owner's land. *See Bd. of Cnty. Commis. v. Park Cnty. Sportsmen's Ranch, L.L.P.,* 45 P.3d 693, 710 (Colo.2002) (the law of minerals and property ownership is inapplicable to water and water use rights); *People v. Emmert,* 198 Colo. 137, 143, 597 P.2d 1025, 1029 (1979) (a riparian bed owner's exclusive use of water overlying his or her land is distinguished from the right of water appropriation). As for timber and growing crops, jurisdictions are divided as to whether these may be attached by creditors. *Vought v. Kanne,* 10 F.2d 747, 748 (8th Cir.1926) ("There is some conflict in the different jurisdictions as to whether such crops, while unsevered, are personalty or realty but the great weight of authority is that unsevered annual crops are personalty."). In bankruptcy proceedings, however, federal courts have ruled that growing crops are not exempt under a homestead exemption, absent an express provision for such an exemption from the state legislature. *Id.* at 749 (noting that the Minnesota homestead statute refers entirely to the resi-

1. This statute exempts various items used to engage in agriculture, to the extent of fifty thousand dollars. § 13–54–102(1)(g)(I), C.R.S.2013. The parties have not argued, however, that a water right can be considered an "agricultural tool"

under this statute. *See Crum v. April Corp.,* 62 P.3d 1039, 1042 (Colo.App.2002) (arguments not raised in the trial court cannot be considered on appeal).

dence and to land, and makes no mention of crops or produce); *In re Sullivan,* 148 F. 815, 818 (8th Cir.1906) (fully matured corn standing in the field of a homestead is not exempt under Iowa's homestead exemption statute).

¶ 36 Finally, although the majority characterizes the attachment of the mutual ditch company shares as "dehydrating" the homestead, the mutual ditch company shares were not the only source of water for the property. Plaintiffs sought to attach only water rights that were evidenced by the mutual ditch company stock shares, leaving to the Hockers "2 acre foot units of water as allocated by the Northern Colorado Water Conservancy District" that were referenced in the Hockers' deed. No party has alleged that the remaining water was insufficient for residential needs.

¶ 37 In my view, the majority reads too much into the single word "farm," and in doing so, makes a decision of public policy that should be left to the General Assembly. *See Wright,* 18 Colo. at 57, 31 P. at 491 ("[homestead] exemption statutes are to be liberally construed so as to promote the humane policy of such legislation; but the courts cannot, by construction, annex to such statutes consequences not fairly within their purview or intent"); *Claim of Green,* 789 P.2d 481, 483 (Colo.App.1990) ("An exception not made by the General Assembly cannot be read into the statute."). Because I do not read the plain language of the homestead exemption statute to include shares in a mutual ditch company, I would affirm the trial court's judgment.