23CA1970 Innis v Innis 10-03-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1970
Mesa County District Court No. 20CV30309
Honorable Valerie J. Robison, Judge

---

Norma J. Innis and Richard L. Innis,

Plaintiffs-Appellees,

v.

Dain D. Innis and Lynnette Y. Innis,

Defendants-Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

---

Brett R. Lilly, LLC, Brett R. Lilly, Wheat Ridge, Colorado, for Plaintiffs-Appellees

Wegener Lane & Evans, P.C., Benjamin M. Wegener, Dalen B. Porter, Grand Junction, Colorado, for Defendants-Appellants

¶ 1     Defendants, Dain D. Innis (Dain) and Lynette Y. Innis (Lynn),[1] appeal the district court's judgment concluding that plaintiff Norma J. Innis (Norma) did not convey water rights to Dain's sole ownership.  We affirm.

## I.     Background

¶ 2     Norma and her husband, Richard L. Innis (Richard), owned several adjacent properties in Grand Junction: 2108 Desert Hills Road (2108 property), 2110 1/2 Desert Hills Road (2110 1/2 property), and 2112 Desert Hills Road (2112 property).  Norma and Richard live at the 2108 property.  Dawn Maiella (Dawn), Norma and Richard's daughter and Dain's sister, lives at the 2112 property.  In 1989, the three properties were placed into the Innis Land Trust (trust).  At the creation of the trust, no Innis family member held an interest in 2110 Desert Hills Road (2110 property), the property at issue in the action.

¶ 3     The 2110 property parcel includes portions of two bodies of water.  The parties refer to the bigger body of water as Barrett Pond

---

[1] Because many of the parties share the same last name, we will refer to individuals by their first names.  No disrespect is intended.

(and sometimes the "lake") and the smaller body of water as Barrett Ditch.

¶ 4    In 1990, Dain moved to Grand Junction and lived with Norma and Richard.  Dain eventually moved into a mobile home placed on the 2110 1/2 property.  Norma and Richard intended that the 2110 1/2 property and the 2112 property be given to Dawn and Dain, respectively, as their shares of the trust.  The map below, which was admitted as an exhibit at trial, depicts the four properties discussed in this opinion.[2]

---

[2] The map is an aerial view of the four properties discussed in this opinion taken from plaintiff's Exhibit 20.  The image includes the properties from top to bottom: 2108, 2110, 2110 1/2, and 2112. There are yellow lines depicting the boundaries of the four properties.  The 2110 1/2 property does not have a number labeling it.  The properties adjacent to the numbered properties are not a part of this matter.



¶ 5     In 1993, Juel Noren (Noren) and his spouse purchased the 2110 property. Norma and Richard became close with the Norens, and the four discussed Norma and Richard's acquisition of that property to place in the trust corpus. In 2003, an agreement and promissory note were drafted; the agreement was signed by Dain and Norma and the promissory note was signed by Dain, Norma, and Richard. Noren did not sign the agreement, so the 2110

property did not transfer at that time; Noren intended to devise the 2110 property to the Innises upon his death.

¶ 6 In February 2005, however, Noren executed a warranty deed conveying the property in joint tenancy to himself, Norma, and Dain. Following Noren's death, a relative of Noren's unsuccessfully challenged Noren's conveyance of the 2110 property to Dain and Norma. After the lawsuit, Dain and his wife, Lynn, began living on the property.

¶ 7 In 2014, a fire caused extensive damage to the 2110 property. The property was covered by a homeowner's insurance policy. Insurance payouts were made to Dain and Norma, as joint tenants, and were received in the mail via check. The insurance proceeds were used to build a new home. To facilitate electronic delivery of the insurance proceeds, Dain added Norma to his bank account.

¶ 8 The insurance proceeds did not cover the entire rebuilding cost. Norma was unwilling to cosign a loan, but she agreed to sign a quitclaim deed so that the 2110 property would be solely in Dain's name and could be used as collateral.

¶ 9 At the bench trial, Richard and Norma testified that they made it clear to Dain that the 2110 property was to be restored to the

joint tenancy with Norma once he completed the project so that the property could be added to the trust. Dain testified, though, that it was always his intent to obtain a mortgage with Lynn and never return the property to the joint tenancy with Norma.

¶ 10 Norma signed the quitclaim deed on February 18, 2016. Norma did not receive consideration for this conveyance. On February 23, 2016, Dain signed the quitclaim deed, so the property was solely in his name. On that same day, Dain conveyed the property as a joint tenancy with Lynn. On March 4, 2016, Dain and Lynn acquired a mortgage on the 2110 property.[3]

¶ 11 Over the next several years after the conveyance, Dain's relationship with his parents significantly deteriorated.

¶ 12 Norma eventually filed a complaint to restore her as a joint tenant of, and to remove Lynn from the title on, the 2110 property. Norma asserted six claims against Dain and Lynn, including unjust enrichment, promissory estoppel, breach of contract, constructive

---

[3] Wells Fargo holds the note for Dain and Lynn's mortgage with the 2110 property as collateral. Wells Fargo was originally named in the complaint. All parties entered into a stipulation acknowledging that Wells Fargo has a first position priority lien encumbered on the property and that, regardless of the quiet title action, Wells Fargo's first position priority lien remains in effect.

trust, fraudulent inducement, and quiet title as to water rights. Dain and Lynn counterclaimed, naming Richard as a third-party defendant and asserting four claims including quiet title, declaratory judgment, breach of contract, and conversion. At some point after Norma's complaint was filed, Dain broke into his parents' home and stole most of Norma's records relating to the 2110 property. The records were later provided to Norma and Richard as part of the discovery process.

¶ 13     After a four-day bench trial, the district court issued a detailed order on November 22, 2022 (November 2022 order). The district court found that the deed conveying the 2110 property to Dain was a valid transfer, so Norma's claims for breach of contract, constructive trust, promissory estoppel, and fraudulent inducement failed. The court, however, found that Dain was unjustly enriched by keeping the property solely in his name because Norma signed the quitclaim deed for no consideration. The court entered a judgment in favor of Norma for $240,390 for her share of the property as a former joint tenant.

¶ 14     As pertinent to this appeal, the district court also found that the water rights to the 2110 property were not transferred by the

2016 quitclaim deed signed by Norma and that such rights remained held in joint tenancy by Dain and Norma.

¶ 15    The court stated that the warranty deed from Noren conveying the property to Dain and Norma included language that conveyed "all water, water rights, ditches and ditch rights appurtenant thereto," but the 2016 quitclaim deed from Norma to Dain did not include this language.  The court determined that Norma's conveyance was intended to be a short-term transfer so Dain could obtain a loan, that the parties did not discuss water rights when the conveyance occurred, and that there was insufficient evidence presented of any intent to convey water rights.

¶ 16    On appeal, Dain and Lynn contend that the district court erred by (1) holding that water rights related to the 2110 property did not transfer solely to Dain on February 23, 2016; (2) failing to determine that the water rights were incidental and necessary to the 2110 property; and (3) infringing on Lynn's rights by quieting title of the water rights to Dain and Norma as joint tenants.

## II.    Jurisdiction

¶ 17    Initially, Dain and Lynn filed a notice of appeal seeking review of the district court's November 2022 order.  Norma and Richard

7

filed a cross-appeal. The appeal and cross-appeal were dismissed by this court without prejudice because we lacked a final appealable order.

¶ 18     In February 2023, Norma and Richard then filed motions in the district court requesting that the court issue (1) a decree quieting title to all water rights related to the 2110 property to Dain and Norma as joint tenants; (2) an order on their bill of costs; and (3) an order determining prejudgment interest owed to Norma for her judgment of $240,390 entered as part of the November 22 order. After briefing on the motions, the district court issued on September 27, 2023: (1) a decree quieting title to the water rights related to the 2110 property; (2) an order awarding Norma and Richard their costs; and (3) an order awarding Norma $129,665.71 in prejudgment interest (September 2023 orders).

¶ 19     Norma and Richard contend that we lack jurisdiction to review the court's November 2022 order because Dain and Lynn's (1) second notice of appeal references only the September 2023 orders and (2) second appeal was untimely, as it was filed nearly a year after the November 2022 order.

¶ 20    We must independently determine our jurisdiction over an appeal. *People v. S.X.G.*, 2012 CO 5, ¶ 9. Subject to exceptions inapplicable here, an appeal to this court may be taken only from a final judgment. § 13-4-102(1), C.R.S. 2024; *see also* C.A.R. 1(a)(1); *People v. G.S.*, 2018 CO 31, ¶ 37.

¶ 21    To be a final appealable order, a judgment or order must address both liability and damages. *Chavez v. Chavez*, 2020 COA 70, ¶ 28. Because prejudgment interest is a component of a damages award, "a judgment awarding prejudgment interest is not final until the amount of such interest is reduced to a sum certain." *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 23 (quoting *Grand Cnty. Custom Homebuilding, LLC v. Bell*, 148 P.3d 398, 401 (Colo. App. 2006)).

¶ 22    If, however, prejudgment interest can be calculated on the face of the judgment, calculation of the interest is a "ministerial" task, rendering the judgment final for purposes of appeal. *Id.* at ¶¶ 25-26. But for prejudgment interest to be reduced to a sum certain, the order must include "(1) the amount of the judgment; (2) the interest rate; and (3) the date on which accrual of prejudgment interest begins." *Id.* at ¶ 26.

¶ 23    At the time Dain and Lynn filed their first notice of appeal, the November 2022 order was not final because, although it set forth the judgment amount of $240,390, it did not identify the interest rate or the date prejudgment interest would begin to accrue. Therefore, the November 2022 order was not final under the test in *Stone Group Holdings*, which is why this court dismissed the first appeal for lack of a final appealable order; the court's judgment, however, became final with the September 2023 order that reduced the prejudgment interest award to a sum certain; therefore, the second notice of appeal was timely filed. And because the district court incorporated its November 22 order into the September 23 decree, our review includes the November 2022 and September 2023 orders.

### III.   Standard of Review

¶ 24    "When a court enters a judgment following a bench trial, that judgment presents a mixed question of law and fact." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12. Under the mixed standard, "[f]indings of fact are generally reviewed under a clear error or abuse of discretion standard, whereas conclusions of law are generally reviewed under a de novo standard." *E-470 Pub.*

*Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000). We may consider the "ultimate conclusion as one of fact for purposes of review and apply the clear error standard." *Id.* In this case, the district court made factual findings intertwined with conclusions of law based on the testimony of the parties.

## IV.  Analysis

¶ 25     Dain and Lynn raise three arguments to support that Norma transferred the water rights associated with the 2110 property to Dain's sole ownership: (1) the express terms of the quitclaim deed transferred the water rights; (2) the water rights are incidental and necessary to the 2110 property; and (3) the court's September 2023 orders infringe on Lynn's rights. We reject all three arguments.

### 1.  Express Terms

¶ 26     Dain and Lynn contend that the water rights were transferred to Dain's sole ownership based on the 2016 quitclaim deed's express language that conveyed the property and all its appurtenant rights. Dain and Lynn refer to the following clause:

> TO HAVE AND TO HOLD same unto Grantees, together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title,

> interest and claim whatsoever, of the Grantor, either in law or equity, to the only proper use, benefit and behoof of the grantees, their heirs and assigns forever.

Thus, Dain and Lynn assert, Norma and Dain's intent as co-grantors was to convey all "right, title, interest, and claim whatsoever" to the 2110 property to the "only proper use" and benefit of Dain, which included the water rights.

¶ 27    In Colorado, water rights are separate from the interests in land. *See Bd. of Cnty. Comm'rs v. Park Cnty. Sportsmen's Ranch, LLP*, 45 P.3d 693, 707 (Colo. 2002) ("[N]either surface water, nor ground water, nor the use rights thereto, nor the water-bearing capacity of natural formations belong to a landowner as a stick in the property rights bundle."); *see also Travelers Ins. Co. v. Janitell Farms, Inc.*, 609 P.2d 1116, 1117 (Colo. App. 1980) ("[A] water right is a property right separate and apart from the land on which it is used . . . . The land for which it was appropriated or on which it has been used may be conveyed or held without the water, and the water may be conveyed or held without the land." (quoting *Nielson v. Newmyer*, 228 P.2d 456, 458 (Colo. 1951))).  Thus, "[o]nce acquired, water rights may be transferred separately from the

12

property itself." *WRWC, LLC v. City of Arvada*, 107 P.3d 1002, 1005 (Colo. App. 2004); *see also Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 640 (Colo. 1987).

¶ 28　To convey water rights, "the same formalities shall be observed and complied with as in the conveyance of real estate." § 38-30-102(2), C.R.S. 2024. It has long been the law in Colorado that water rights are determined by the express terms of the deed that purportedly transfers the rights. *Wanamaker Ditch Co. v. Crane*, 288 P.2d 339, 343 (Colo. 1955).

¶ 29　The 2005 warranty deed conveying the 2110 property in joint tenancy to Noren, Dain, and Norma had language that the conveyance included "all water, water rights, ditches and ditch rights appurtenant thereto." But the 2016 quitclaim deed that conveyed the property from a joint tenancy between Norma and Dain to Dain's sole possession did not include that same language. *See Nielson*, 228 P.2d at 458 ("The land for which it was appropriated or on which it has been used may be conveyed or held without the water, and the water may be conveyed or held without the land, or any part of the land may be conveyed together with any part of the water right and the remainder be retained.") (citation

omitted). Therefore, given the title history for the 2110 property, the district court did not err when it looked at the prior conveyance documents and concluded that, if water rights were intended to be transferred, the 2016 quitclaim deed could have expressly said so. In other words, the 2005 warranty deed executed by Noren included the water rights, and therefore, the parties knew how to convey those rights but chose not to do so in the 2016 quitclaim deed. *See Fox v. 1-10, Ltd.*, 936 P.2d 580, 582-83 (Colo. App. 1998) (as part of a contract interpretation analysis, finding that parties knew how to exempt certain provisions of a partnership agreement's amendment procedures, while they intentionally "chose not to" exempt others), *aff'd*, 957 P.2d 1018 (Colo. 1998). Nonetheless, Dain contends, and we agree, that in certain circumstances, transfer of the property and the appurtenances can include transfer of the water rights. Whether water rights are appurtenant to the land, however, "is generally a question of fact, as is also whether on a sale or transfer of the land, the water right passes as an appurtenance." *Travelers Ins. Co.*, 609 P.2d at 1118 (citing *Denver Joint Stock Land Bank v. Markham*, 107 P.2d 313 (Colo. 1940)). "Where, in conveyance of land a part only of the appurtenant water right is described and

14

specified as being conveyed therewith, such specific designation destroys any presumption of intention to convey the remainder." *Nielson*, 228 P.2d at 458-59.

¶ 30 In considering the testimony of all parties, the district court determined that the transfer was intended to be temporary so Dain could obtain a loan and that the parties did not discuss the transfer of water rights. Because of the short-term nature of the transaction, it was reasonable to infer that the parties had not discussed the water rights. This inference is supported by Dain's affidavit stating that, at the time of the conveyance, he "did not understand that ownership of water rights could be separate from ownership of the land."

¶ 31 Nonetheless, Dain contends that he testified at trial that his intent was to transfer the entirety of the 2110 property interest to his sole possession and then put Lynn's name on the title. He says this makes sense because he was estranged from his parents and because his sister has her own property from the trust so he should have one as well. But Dain and Lynn did not certify transcripts from the bench trial on appeal, and therefore, we must presume

that the court's judgment was correct. *See People v. Duran*, 2015 COA 141, ¶ 21.

¶ 32     And regardless, the November 2022 order made credibility determinations and weighed the conflicting evidence and testimony about the parties' intent surrounding the 2016 quitclaim deed. The court reasoned that "it is more likely than not that Dain was intentionally vague about any promises or agreements he was making so that his mother would take her name off the Property and give the Property solely to him." Credibility determinations are within the sole province of the fact finder, and we may not reweigh the evidence or substitute our judgment for that of the district court. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24.

¶ 33     Dain and Lynn also contend that the water rights for the Barrett Ditch and Barrett Pond were severed in 1986, which would mean that he owned the water rights to Barrett Pond. Norma and Richard claim this argument is unpreserved. But even if Dain and Lynn made this argument in the summary judgment briefing, we do not know how or if the argument was raised at trial because we lack a transcript. *See Duran*, ¶ 21.

16

¶ 34　　Finally, Dain and Lynn contend that because the title history transferring the water rights to his parents for the 2108 property also contained a general reference to that land's appurtenant rights, the general language in the 2016 quitclaim deed likewise transferred the water rights associated with the 2110 property. As part of this argument, he and Lynn ask us to take judicial notice of three deeds, attached to their opening brief, relating to the title histories for the 2108 and 2110 properties.

¶ 35　　These arguments were not raised below, and the documents were not presented to the district court for its consideration. Consequently, we decline to take judicial notice of documents, and we will not review this argument further. *See Laleh v. Johnson,* 2016 COA 4, ¶ 8, *aff'd on other grounds,* 2017 CO 93.[4]

---

[4] Other arguments Dain and Lynn assert on appeal but did not raise below include the following: (1) Dain and Lynn own the "improvements" to the Barrett Pond and Barrett Ditch located on the 2110 property based on the improvements clause in the 2016 quitclaim deed, and (2) the title history for the 2110 property did not always provide a detailed description of the water rights being transferred. Consequently, we will not address them. *See Laleh v. Johnson,* 2016 COA 4, ¶ 8, *aff'd on other grounds,* 2017 CO 93.

## 2. Incidental and Necessary

¶ 36     Dain and Lynn next contend that the water rights must have been transferred to his sole ownership because those rights are incidental and necessary to the 2110 property. They continue that the court made no findings about the incidental and beneficial use of the water rights, necessitating that we remand to the district court.

¶ 37     For support of Dain and Lynn's incidental and necessary arguments, they rely on a number of cases, including *Kinoshita v. N. Denver Bank*, 508 P.2d 1264 (Colo. 1973); *James v. Barker*, 64 P.2d 598 (Colo. 1937); *Hastings & Heyden Realty Co. v. Gest*, 201 P. 37 (Colo. 1921); *Shigo, LLC v. Hocker*, 2014 COA 16.

¶ 38     These cases generally hold that water rights may be appurtenant to the land (incidental) and, thus, transferred absent any specific language in the deed

- when a court determines the intent of the parties "from all the circumstances of the case, including the fact as to the use of the water and whether it is necessary and essential to the beneficial use and enjoyment of the land," *Kinoshita*, 508 P.2d

18

at 1267 (quoting *Hastings & Heyden Realty Co.*, 201 P. at 39);
*see also Shigo, LLC*, ¶ 13; or

- "if the presumptions arising from the circumstances of the transaction make it appear that it was the intention of the grantor that [the rights] should so pass," *James*, 64 P.2d at 600; *see also Hastings*, 201 P. at 39.

Given the case law, the district court primarily focused on Norma's intent, as she was the grantor of the 2016 quitclaim deed. We have previously discussed that Norma considered the transaction to be a short-term deal and that the water rights were never discussed. Again, without the benefit of a transcript, we must presume the record supports the district court's findings. *See Duran*, ¶ 21.

¶ 39 As to whether the water rights are necessary for the beneficial use and enjoyment of the 2110 property, Dain stated in his affidavit that he used Barrett Pond to water his lawn, bushes, and shrubs via an automatic sprinkler and that this is necessary because of the arid climate where the 2110 property is located. Dain also stated that he, Lynn, and their kids used Barrett Pond for recreation and swimming.

¶ 40   But the cases they cite all involve agricultural or irrigation uses of the land, not recreational uses. *See Kinoshita*, 508 P.2d at 1265 (the owner conveyed farmland); *Shigo, LLC*, ¶¶ 3-6 (same); *Hastings*, 201 P. at 40 ("It is also well established that without water the land would be practically worthless for agricultural purposes, and would have a value of only one-tenth the amount paid to obtain its release. This fact is important as indicating the intention to convey the water with the land . . . ."); *James*, 64 P.2d at 600 (water was used for land irrigation). And we cannot find, nor have the parties cited, authority holding that water rights used for landscaping and recreation are necessary and incidental appurtenances to the land so that, absent specific mention of the water rights in a deed, they nonetheless transfer with the land.

¶ 41   And Dain and Lynn's argument that Lynn and Norma cannot use the well is not at issue in this case. As Dain and Lynn pointed out, adjudication of water usage are issues exclusively determined by a water court. Here, we are dealing with ownership of the water rights. *See Allen v. State*, 2019 CO 6, ¶ 1. And because the well is for domestic use only, Dain and Lynn could not use the well for agricultural purposes.

¶ 42 Accordingly, we conclude that the water rights are not incidental and necessary to Dain and Lynn's beneficial use and enjoyment of the land.

### 3. Infringement of Rights

¶ 43 Dain and Lynn's final contention is that the water decree infringes on Lynn's rights as a joint owner of the 2110 property. Norma and Richard contend that this argument was not made below and is therefore unpreserved. Even assuming Lynn's "use" of the water in Barrett Pond and Barrett Ditch is a "right" attached to her property ownership, we cannot find any argument to that effect made below, and again, the transcripts were not provided for our review. Therefore, we conclude that this argument was not raised below, and we will not address it further. *See Laleh*, ¶ 8.

### V. Conclusion

¶ 44 The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.